CHRISTINE SAUNDERS HASKETT (SBN 188053)
SAMUEL F. ERNST (SBN 223963)
COVINGTON & BURLING LLP
One Front Street
San Francisco, California 94111-5356
Telephone: 415.591.6000
Facsimile: 415.955.6091

Attorneys for Plaintiff
DONDI VAN HORN

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| DONDI VAN HORN,<br><br>         Plaintiff,<br><br>  v.<br><br>TINA HORNBEAK individually and as Warden of Valley State Prison For Women; JAMES E. TILTON individually and as Secretary of the California Department of Corrections and Rehabilitation; ROBIN DEZEMBER individually and as Chief Deputy Secretary of California Department of Corrections and Rehabilitation; JEFF THOMPSON individually and as Director of California Department of Corrections and Rehabilitation; ROBERT SILLEN individually and as former California Health System Receiver; CLARK KELSON individually and as acting California Health System Receiver; DR. VIRK (First Name Unknown) individually and as Chief Medical Officer of Valley State Prison for Women; JAMES HEINRICH individually and as a physician employed at Valley State Prison for Women; MADERA COMMUNITY HOSPITAL; TINA DHILLON an individual; and NAEEM SIDDIQI an individual,<br><br>         Defendants. | Case No.:<br><br>**COMPLAINT FOR DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED PURSUANT TO 42 U.S.C. § 1983, MEDICAL MALPRACTICE, WRONGFUL DEATH, AND INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT; CASE NO.

# COMPLAINT

Plaintiff sues Defendants and states as follows:

## JURISDICTION AND VENUE

1. This is an action brought against certain of the Defendants pursuant to Title 42 U.S.C., Section 1983 and Title 28 U.S.C., Section 1343 seeking damages for committing acts, under color of law, which deprived Plaintiff, DONDI VAN HORN of rights secured under the Constitution and laws of the United States. This Court has original jurisdiction pursuant to Title 28 U.S.C., Sections 1331 and 1343.

2. Plaintiff has exhausted her administrative remedies. Plaintiff filed a Government Claim Form with the California Victim Compensation and Government Claims Board on January 30, 2008. On April 30, 2008 her claim was rejected. Pursuant to California Government Code Section 945.6, following the rejection of a claim Plaintiff has six months within which to file a complaint. See attached Ex. A.

3. Plaintiff seeks Supplemental Jurisdiction of the Court against various Defendants for those Defendants' negligence pursuant to 28 U.S.C. § 1316 in that these claims derive from a common nucleus of operative facts and are so interrelated that the Plaintiff would ordinarily be expected to try them in one judicial proceeding, and considerations of judicial economy, convenience, and fairness to all litigants dictate that the Court should exercise its discretion to hear the supplemental claims.

4. Plaintiff has complied with the notice requirements of California Code of Civil Procedure section 364. See attached Ex. B.

## PARTIES

5. The Plaintiff, DONDI VAN HORN, is a resident of California.

6. JAMES E. TILTON ("TILTON") is Secretary of the California Department of Corrections and Rehabilitation ("CDCR"). At all times material to this suit, TILTON had oversight of and was accountable for each and every decision made and each and all actions conducted by any CDCR employees and/or agents, including, but not limited to, the decisions and actions pertaining to the custody, care and medical treatment of the inmates under CDCR direction.

Plaintiff is informed and believes that TILTON is a resident of California.

7. ROBIN DEZEMBER ("DEZEMBER") is Chief Deputy Secretary of CDCR. At all times material to this suit, DEZEMBER had oversight of and was accountable for each and every decision made and each and all actions conducted by any CDCR employees and/or agents, including, but not limited to, the decisions and actions pertaining to the custody, care and medical treatment of the inmates under CDCR direction. Plaintiff is informed and believes that DEZEMBER is a resident of California.

8. JEFF THOMPSON ("THOMPSON") is the Director of CDCR. At all times material to this suit, THOMPSON had oversight of and was accountable for each and every decision made and each and all actions conducted by any CDCR employees and/or agents, including, but not limited to, the decisions and actions pertaining to the custody, care and medical treatment of the inmates under CDCR direction. Plaintiff is informed and believes that THOMPSON is a resident of California.

9. ROBERT SILLEN ("SILLEN") is the former California Health System Receiver. At all times material to this suit, SILLEN had oversight and control over all actions conducted by CDCR employees and policies adopted which related to the care and medical treatment of inmates under CDCR direction. Plaintiff is informed and believes that SILLEN is a resident of California.

10. CLARK KELSON ("KELSON") is the acting California Health System Receiver. He is charged with oversight of and responsibility for each and every decision made and each and all actions conducted pertaining to the care and medical treatment of inmates under CDCR direction. Plaintiff is informed and believes that KELSON is a resident of California.

11. TINA HORNBEAK, was Warden of Valley State Prison for Women ("VSPW") at all times material to this claim and was responsible for the supervision and management of VSPW.

12. DR. VIRK (First Name Unknown) ("VIRK") was Chief Medical Officer of VSPW at all times material to this claim.

13. JAMES HEINRICH, M.D. ("HEINRICH"), was a physician employed by VSPW at all times material to this claim.

14. At all times mentioned herein, the Defendants named in paragraphs 6-8 (collectively

3

COMPLAINT; CASE NO.

the "CDCR Defendants"), 9-10 (collectively the "Receiver Defendants") and 11-13 (collectively "the VSPW Defendants") were each the agent, servant and employee of each other, and these Defendants were acting within the course and scope of said agency and employment with knowledge and consent of each employer and principal.

15. MADERA COMMUNITY HOSPITAL ("MCH") is a hospital whose responsibilities include providing health care services to members of the community. At all times material to this suit, MCH was accountable for each and every decision made and each and all actions conducted by any of its employees and/or agents, including, but not limited to, the decisions and actions pertaining to the custody, care and medical treatment of the patients in its care. Such patients included, from time to time, VSPW inmates.

16. TINA DHILLON, M.D. ("DHILLON") was a physician at MCH at all times material to this claim.

17. NAEEM SIDDIQI, M.D. ("SIDDIQI") was a physician at MCH at all times material to this claim.

## GROUP B STREPTOCOCCUS BACKGROUND

18. Group B Streptococcus ("GBS") bacteria is frequently carried by pregnant women. If passed to a baby during delivery, GBS has a high likelihood of causing the baby serious long term physical or mental disabilities or, in many cases, death. However, the administration of antibiotics to the mother during delivery has been shown to significantly reduce the risk that a baby will contract GBS during delivery.

19. In 1996, the Center for Disease Control ("CDC") and the American College of Obstetricians and Gynecologists ("ACOG") passed guidelines to address the danger of GBS in newborns. The guidelines recommended that physicians either screen pregnant women for GBS sometime between the 35th and 37th week of pregnancy or rely on certain indicators of high risk of a GBS infection to determine whether or not to treat the mother with antibiotics during delivery.

20. In 2002, following significant studies of both preventative options, the CDC and ACOG concluded that screening was the more effective method for determining whether or not a woman should receive antibiotics during delivery. Consequently, guidelines adopted in 2002 by

4

COMPLAINT; CASE NO.

both groups, and still in place today, recommend the testing of all pregnant women for GBS sometime between the 35th and 37th week of pregnancy.

21.     The CDC and ACOG guidelines on GBS represent the accepted standard of care for all pregnant women. They have been in place since 2002 and are widely known and followed.

## GENERAL ALLEGATIONS

22.     Traditionally, the responsibility for administering, managing and supervising the health care delivery system at VSPW rests with the Receiver Defendants, the CDCR Defendants and the VSPW Defendants. This includes establishing and administering policies for the care and treatment of the medical needs of all inmates within the California Department of Corrections system that are in accordance with the accepted standards of care.

23.     VSPW has a medical treatment facility and staff to attend to the health care needs of VSPW inmates, including the needs of those inmates who are pregnant at the time of incarceration.

24.     In 2007, medical care was also provided to VSPW inmates by MCH – a private hospital near the prison. Care provided by MCH included prenatal care and delivery for pregnant inmates.

25.     Ms. VAN HORN was incarcerated in or about April 2007. She entered VSPW as an inmate on or about July 31, 2007. From that point forward she was under the custody or control of VSPW, including the medical staff.

26.     Ms. VAN HORN was approximately 34 weeks pregnant when she arrived at VSPW. The VSPW Defendants were aware that Ms. VAN HORN was pregnant and that her pregnancy was considered high risk due to her advanced maternal age and past history of high-risk pregnancies.

27.     Defendant HEINRICH, at all times during Ms. VAN HORN's incarceration at VSPW, was the primary VSPW physician responsible for her prenatal care. He conducted prenatal exams and directed the course of her prenatal care and treatment while at VSWP. He was also the physician responsible for administering the care and treatment prescribed by MCH on the occasions Ms. VAN HORN was seen by MCH physicians. He is the physician whose signature appears on Ms. VAN HORN's medical records from VSPW. At all times during her incarceration at VSPW, Ms. VAN HORN was dependent on HEINRICH and the VSPW medical staff for the care and

safety of her unborn child.

28. Ms. VAN HORN also came under the care and responsibility of MCH and MCH staff, including DHILLON and SIDDIQI. She was seen several times by MCH staff in the weeks leading up to the delivery of her baby. DHILLON and MCH staff delivered Ms. VAN HORN's baby.

29. On August 1, 2007 Ms. VAN HORN was seen by HEINRICH for the first time. HEINRICH examined Ms. VAN HORN and conducted a pap smear. HEINRICH and VSPW medical staff did not test Ms. VAN HORN for GBS at this time.

30. On August 4, 2007, Ms. VAN HORN complained of lower back pain and other symptoms of pre-term labor. She was sent to MCH by VSPW medical staff, diagnosed as dehydrated, and treated with intravenous therapy. Ms. VAN HORN was not tested by VSPW medical staff, SIDDIQI or other MCH medical staff for GBS at this time.

31. Ms. VAN HORN was instructed by MCH staff on August 4, 2007, to remain on bed rest and to get up only to use the bathroom. However, upon returning to VSPW, she was not kept in the infirmary or closely monitored. Rather, on HEINRICH's instructions, she was returned to her General Population Unit, requiring Ms. VAN HORN to walk approximately a quarter-mile to the kitchen for breakfast and dinner. Ms. VAN HORN was not tested for GBS by HEINRICH or VSPW medical staff at this time.

32. On or about August 9, 2007, Ms. VAN HORN returned to HEINRICH complaining of pain and was told to "deal with it." Because of her condition, Ms. VAN HORN was in severe pain whenever she was required to walk. Ms. VAN HORN was not tested for GBS by HEINRICH or VSPW medical staff at this time.

33. On or about August 20, 2007, medical records indicate that Ms. VAN HORN complained of cramping and was sent by VSPW medical staff to MCH. There, she was seen by MCH staff, including DHILLON. Ms. VAN HORN was experiencing symptoms of early labor and she was instructed to increase her hydration. She was not, however, given intravenous fluids or pain medication. Because of overcrowding at MCH, she was returned to VSPW after only a few hours without having receiving the prescribed treatment. On information and belief, VSPW

COMPLAINT; CASE NO.

employees were aware of the treatment that had been prescribed. Ms. VAN HORN did not receive the prescribed treatment upon her return to VSPW either; in fact, no effort was made to determine whether she needed medical attention after her return from MCH. Ms. VAN HORN was not tested for GBS by DHILLON, MCH or VSPW medical staff at this time.

34. On August 21, 2007, Ms. VAN HORN complained of vaginal leakage, back pain and cramps. She was sent to MCH. Ms. VAN HORN was not tested for GBS by MCH or VSPW medical staff at this time.

35. On or about the same day, Ms. VAN HORN was admitted to the infirmary at VSPW for overnight observation and monitoring of her contractions. She was checked on only once during this time. Ms. VAN HORN was not tested for GBS by VSPW medical staff at this time.

36. On or around the early morning of August 22, 2007, Ms. VAN HORN fell while still in the VSPW infirmary. She experienced pain and some bleeding. Ms. VAN HORN saw HEINRICH and informed him of the fall, but he did not examine her in relation to the fall. He informed her she would have to "deal with" her pain. She was further told that as long as she did not land on her baby, she was fine. She continued to feel pain on the right side of her hip and developed a bump on her right wrist. Ms. VAN HORN was not tested for GBS by HEINRICH or VSPW medical staff at this time.

37. On or around August 22, 2007, Ms. VAN HORN experienced severe discomfort in her lower back and cramping. She was vomiting and experienced diarrhea and spent the night under observation. HEINRICH treated her with nausea medication and intravenous therapy. She was told she had the flu and was ultimately returned to her unit with instructions to hydrate. Ms. VAN HORN was not tested for GBS by HEINRICH or VSPW medical staff at this time.

38. On August 26, 2007, Ms. VAN HORN was between 38 and 39 weeks pregnant (considered to be full term) and went into labor. She was sent to the VSPW infirmary and later to MCH.

39. Shortly before breaking her water, DHILLON of MCH asked Ms. VAN HORN whether she knew the results of her GBS test. Ms. VAN HORN told DHILLON that she did not know if she had been tested.

7

40. Medical records from MCH indicate that at the time of labor, the hospital showed no pap smear, no AFP results and that no GBS test was done. VSPW was contacted for a copy of the most recent ultrasound and GBS test results, but could not locate Ms. VAN HORN's charts. Antibiotics, which could reduce or eliminate the risk of a Group-B Streptococcus infection in the baby, were not administered during labor.

41. Ms. VAN HORN's baby was delivered by cesarean section at 1720 hours following 10 hours of labor during which Ms. VAN HORN had only progressed to approximately 3-cm dilated. When born, the 6 lb. 1 ounce baby boy had an Apgar score of 9, which was considered initially "vigorous."

42. Ms. VAN HORN's son's condition deteriorated rapidly. The baby was transferred to Children's Hospital for treatment at 0155 hours on August 27, 2007. He died at 2229 hours on August 27, 2007. The cause of the baby's death was found to be a perinatal Group B Streptococcal infection. Medical files for the baby indicate that there was no history of antibiotic administration during delivery and that Ms. VAN HORN's Group B Streptococcus status was unknown.

43. During her pregnancy, Ms. VAN HORN experienced pain, signs of early labor, and ill health. She was seen on at least 6 different occasions by VSPW and/or MCH medical staff between the time she arrived at VSPW and the day she delivered her baby. At no time during her visits to the VSPW medical facilities or MCH was a GBS test given. At no time prior to August 26, 2007 was a GBS test even mentioned to Ms. VAN HORN.

44. Ms. VAN HORN was seen by HEINRICH and VSPW staff sometime after returning from MCH in order to have the staples from the cesarean section removed. During this visit, when confronted by Ms. VAN HORN regarding the death of her baby, HEINRICH claimed that she had not been tested for GBS because she had only one scheduled OB exam while at VSPW.

45. During the same visit, a nurse informed Ms. VAN HORN that as a result of the death of her baby, VSPW medical policy had been changed to test women for GBS at 32 weeks rather than 34 weeks. However, Ms. VAN HORN observed that testing of other pregnant inmates continued to be inconsistent.

46. The failure to test for GBS between the 35th and 37th week of Ms. VAN HORN's

pregnancy directly contradicts the guidelines provided by the CDC and ACOG. Each of the individual defendants participated in and or bore responsibility for Ms. VAN HORN's medical care and ultimately for the health of her baby. Consequently, each individual defendant violated their duty of care in the following manner:

- Each time Ms. VAN HORN was seen by VSPW medical staff, including HEINRICH, they had the opportunity and obligation to test Ms. VAN HORN for GBS and did not.
- VSPW medical staff, including HEINRICH, had, at all times, control over the scheduling and frequency of Ms. VAN HORN'S prenatal examinations and could and should have scheduled an exam of Ms. VAN HORN in order to test her for GBS but did not.
- Each time Ms. VAN HORN was sent to MCH for medical care, MCH staff, including DHILLON and SIDDIQI, had the opportunity and obligation to obtain her updated medical history from VSPW to determine if she had been tested for GBS and did not.
- Each time Ms. VAN HORN was sent to MCH for medical care, MCH staff, including DHILLON and SIDDIQI had the opportunity and obligation to test Ms. VAN HORN for GBS and did not.

47. As a direct result of this inaction by the defendants in violation of clear and accepted treatment guidelines, Ms. VAN HORN's baby lived only one day, ultimately dying of a perinatal Group-B Streptococcal infection, which could have been prevented by the timely administration of antibiotics had any of the defendants followed the proper standard of care.

48. Furthermore, in failing to have in place and/or by repeatedly failing to follow a policy mandating the testing of pregnant women for GBS in accordance with CDC and ACOG guidelines, the Receiver Defendants, CDCR Defendants and VSPW Defendants exhibited substantial deliberate indifference to the serious medical needs of Ms. VAN HORN.

49. The Eighth Amendment to the United States Constitution imposes upon prison officials the duty to provide humane conditions of confinement, including the obligation to provide adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

50. The Eighth Amendment's prohibition against cruel and unusual punishment applies

9

COMPLAINT; CASE NO.

to prison officials when they provide said medical care to inmates.

51. The unnecessary and wanton infliction of pain or deliberate indifference to serious medical needs of prisoners are sufficiently egregious to rise to the level of a constitutional violation of the Eights Amendment. *Estelle*, 429 U.S. at 103.

52. Prison officials, as well as those put in charge of the medical care of a facility, who engage in substantial and deliberate indifference to an inmates serious medical needs, violate the inmates rights of due process as applied to the states under the Fourteenth Amendment of the united States Constitution. *Jones v. Johnson*, 781 F.2d 769 (9th Cir. 1986).

53. As a direct result of the actions of all defendants, Ms VAN HORN has suffered and continues to suffer severe emotional distress because of the loss of her child. Since her baby's death, Ms. VAN HORN has had ongoing grief and post traumatic counseling.

## FIRST CAUSE OF ACTION FOR DELIBERATE INDIFFERENCE PURSUANT TO 42 U.S.C. SECTION 1983
### (Against the Receiver Defendants)

54. Plaintiff, DONDI VAN HORN, refers to and incorporates by reference the allegations of paragraphs 1 through 53 as if fully set forth herein.

55. At all relevant times, Receiver Defendants FORMER CALIFORNIA HEALTH SYSTEM RECEIVER ROBERT SILLEN and CURRENT CALIFORNIA HEALTH SYSTEM RECEIVER CLARK KELSON were acting under the color of law in ensuring that the care and quality of medical services in California prisons meet constitutional standards.

56. At all relevant times, said Defendants adopted and effected a policy and custom of deliberate indifference to the serious medical needs of the prisoners at VSPW, including Plaintiff, which was manifested in incompetent and inadequate medical staffing, inaccurate and substandard medical record-keeping, and failure to provide adequate, standardized prenatal care and monitoring, including routine screening for vaginal GBS infection.

57. As a direct and proximate result of these policies and customs, during her incarceration, Plaintiff suffered from pain, discomfort and nausea associated with pregnancy which were not treated, causing her unnecessary pain and suffering.

COMPLAINT; CASE NO.

58. As a direct and proximate result of these policies and customs, during her incarceration, Plaintiff was not screened for vaginal GBS infection, and as a direct consequence, Plaintiff's baby died of GBS infection on or about August 27, 2007, causing Plaintiff psychological injuries and severe emotional distress.

59. The said Defendants' deliberate indifference to the serious medical needs of Plaintiff violated Plaintiff's Eighth Amendment constitutional right to protection from cruel and unusual punishment.

## SECOND CAUSE OF ACTION FOR DELIBERATE INDIFFERENCE PURSUANT TO 42 U.S.C. SECTION 1983

### (Against the CDCR Defendants)

60. Plaintiff refers to and incorporates by reference the allegations of paragraphs 1 through 59 as if fully set forth herein.

61. At all relevant times, Defendants SECRETARY JAMES E. TILTON, CHIEF DEPUTY SECRETARY ROBIN DEZEMBER, and DIRECTOR JEFF THOMPSON were acting under the color of law in overseeing the operations of all state adult prisons in California, including VSPW.

62. At all relevant times, said Defendants adopted and effected a policy and custom of deliberate indifference to the serious medical needs of the prisoners at VSPW, including Plaintiff, which was manifested in incompetent and inadequate medical staffing, inaccurate and substandard medical record-keeping, and failure to provide adequate, standardized prenatal care and monitoring, including routine screening for vaginal GBS infection.

63. As a direct and proximate result of these policies and customs, during her incarceration, Plaintiff suffered from pain, discomfort and nausea associated with pregnancy which were not treated, causing her unnecessary pain and suffering.

64. As a direct and proximate result of said Defendants' actions, during her incarceration, Plaintiff was not screened for vaginal GBS infection, and as a direct consequence, Plaintiff's baby died of GBS infection on or about August 27, 2007, causing Plaintiff psychological injuries and severe emotional distress.

COMPLAINT; CASE NO.

65. The said Defendants' deliberate indifference to the serious medical needs of Plaintiff violated Plaintiff's Eighth Amendment constitutional right to protection from cruel and unusual punishment.

### THIRD CAUSE OF ACTION FOR DELIBERATE INDIFFERENCE PURSUANT TO 42 U.S.C. SECTION 1983
### (Against VSPW Defendants)

66. Plaintiff refers to and incorporates by reference the allegations of paragraphs 1 through 65 as if fully set forth herein.

67. At all relevant times, DEFENDANTS WARDEN TINA HORNBEAK, CHIEF MEDICAL OFFICER DR. VIRK (First Name Unknown), and DR. JAMES HEINRICH were acting under the color of law in performing their duties of treating and providing medical care and assistance to all prisoners of VSPW, including Plaintiff.

68. At all relevant times, said Defendants acted with deliberate indifference to the Plaintiff's serious medical needs by failing to provide necessary prenatal care during her pregnancy, failing to maintain accessible and accurate medical records of Plaintiff, and refusing to follow medical recommendations for Plaintiff's continued care. Specifically, Defendants failed to administer routine vaginal GBS screening to Plaintiff during her term, failed to administer antibiotics during labor, and, on information and belief, failed to timely locate medical records of Plaintiff's GBS infection status when she went into labor.

69. As a direct and proximate result of said Defendants' actions, during her incarceration, Plaintiff suffered from pain, discomfort and nausea associated with pregnancy which were not treated, causing her unnecessary pain and suffering.

70. As a direct and proximate result of said Defendants' actions, during her incarceration, Plaintiff was not screened for vaginal GBS infection, and as a direct consequence, Plaintiff suffered the death of her baby on or about August 27, 2007, causing her psychological injuries and severe emotional distress.

71. The said Defendants' deliberate indifference to the serious medical needs of Plaintiff violated Plaintiff's Eighth Amendment constitutional right to protection from cruel and unusual

punishment.

## FOURTH CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE

### (Against HEINRICH)

72. Plaintiff refers to and incorporates by reference paragraphs 1 through 71 as though set forth herein. This professional negligence count invokes the supplemental jurisdiction of this Court.

73. At all relevant times, Defendant DR. JAMES HEINRICH intentionally or at least negligently failed to provide standardized prenatal care to Plaintiff, including the administration of routine GBS infection screening to Plaintiff.

74. The aforementioned action by Defendant HEINRICH constituted a breach of his duty of care to Plaintiff, and was a departure from the reasonable standard of care.

75. The aforementioned action by Defendant HEINRICH was a direct and proximate cause of the death of Plaintiff's baby on or about August 27, 2007.

## FIFTH CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE

### (Against MCH, DHILLON and SIDDIQI)

76. Plaintiff refers to and incorporates by reference paragraphs 1 through 75 as though set forth herein. This professional negligence count invokes the supplemental jurisdiction of this Court.

77. At all relevant times, Defendants MCH and its employees, including DR. TINA DHILLON and DR. NAEEM SIDDIQI intentionally or at least negligently failed to provide standardized prenatal care to Plaintiff, including the administration of routine GBS infection screening to Plaintiff.

78. The aforementioned action by the Defendants constituted a breach of their duty of care to Plaintiff, and was a departure from the reasonable standard of care.

79. The aforementioned action by the Defendants was a direct and proximate cause of the death of Plaintiff's baby on or about August 27, 2007.

COMPLAINT; CASE NO.

## SIXTH CAUSE OF ACTION FOR INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (Against VIRK and HEINRICH)

80. Plaintiff refers to and incorporates by reference paragraphs 1 through 79 as though set forth herein. This count invokes the supplemental jurisdiction of this Court.

81. Defendant VSPW is liable to Plaintiff for the negligence of its employees in caring for, attending to and treating the serious medical needs of Plaintiff under the doctrine of respondeat superior.

82. At all relevant times, Defendants DR. VIRK (First Name Unknown) and DR. JAMES HEINRICH intentionally or at least negligently failed to provide standardized prenatal care to Plaintiff, including the administration of routine GBS infection screening to Plaintiff.

83. The aforementioned action by the Defendants constituted a breach of their duty of care to Plaintiff, and was a departure from the reasonable standard of care.

84. The aforementioned action by the Defendants was a direct and proximate cause of the death of Plaintiff's baby on or about August 27, 2007.

85. As a direct and proximate result of the breaches of duty by the State Defendants, Plaintiff suffered the death of her baby on or about August 27, 2007, causing her psychological injuries and severe emotional distress.

## SEVENTH CAUSE OF ACTION FOR INTENTIONAL OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (Against MCH, DHILLON and SIDDIQI)

86. Plaintiff refers to and incorporates by reference paragraphs 1 through 85 as though set forth herein. This count invokes the supplemental jurisdiction of this Court.

87. Defendant MCH is liable to Plaintiff for the negligence of its employees in caring for, attending to and treating the serious medical needs of Plaintiff under the doctrine of respondeat superior.

88. At all relevant times, Defendants MCH and its employees, including DR. TINA DHILLON and DR. NAEEM SIDDIQI intentionally or negligently failed to provide necessary

COMPLAINT; CASE NO.

treatment for her medical condition. Specifically, Plaintiff is informed and believes and based thereon alleges that said Defendants intentionally or negligently failed to test Plaintiff for GBS and failed to provide Plaintiff with necessary antibiotics treatment when she went into labor on or about August 26, 2007 with an unknown GBS infection status.

89. The aforementioned action by said Defendants constituted a breach of their duty of care to Plaintiff, and was a departure from the reasonable standard of care.

90. The aforementioned action by said Defendants was a direct and proximate cause of the death of Plaintiff's baby on or about August 27, 2007.

91. As a direct and proximate result of the breaches of duty by said Defendants, Plaintiff suffered the death of her baby on or about August 27, 2007, causing her psychological injuries and severe motional distress.

## EIGHTH CAUSE OF ACTION FOR WRONGFUL DEATH
### (Against VIRK and HEINRICH)

92. Plaintiff refers to and incorporates by reference paragraphs 1 through 91 as though set forth herein. This count invokes the supplemental jurisdiction of this Court.

93. At all relevant times, Defendants DR. VIRK (First Name Unknown) and DR. JAMES HEINRICH negligently failed to provide standardized prenatal care to Plaintiff. Specifically, Defendants negligently failed to administer routine GBS infection screening to Plaintiff, failed to administer antibiotics during labor, and, on information and belief, negligently failed to timely locate Plaintiff's GBS infection status when Plaintiff went into labor.

94. The aforementioned negligence by said Defendants was a direct and proximate cause of the death of the Plaintiff's baby on or about August 27, 2007.

95. As a direct and proximate result of said State Defendants' negligence, Plaintiff has been deprived of the services, earnings, society, comfort and protection of her baby.

96. As a direct and proximate result of said State Defendants' negligence, Plaintiff has been generally damaged in the sum to be established according to proof.

97. As a direct and proximate result of the death of the Plaintiff's baby, Plaintiff has incurred reasonable and necessary expenses for the baby's funeral, burial and memorial services in

15

COMPLAINT; CASE NO.

the sum to be established according to proof at trial.

## NINTH CAUSE OF ACTION FOR WRONGFUL DEATH

### (Against MCH, DHILLON and SIDDIQI)

98. Plaintiff refers to and incorporate by reference paragraphs 1 through 97 as though set forth herein. This count invokes the supplemental jurisdiction of this Court.

99. Individual Defendant MCH is liable to Plaintiff for the negligence of its employees in caring for, attending to and treating the serious medical needs of Plaintiff under the doctrine of respondeat superior.

100. At all relevant times, Individual Defendants MCH and its employees, including DR. TINA DHILLON and DR. NAEEM SIDDIQI negligently failed to provide necessary monitoring and treatment for her medical condition. Specifically, Plaintiff is informed and believes and based thereon alleges that said Defendants negligently failed to administer routine GBS infection screening to Plaintiff, and negligently failed to provide necessary antibiotics treatment when Plaintiff went into labor on or about August 26, 2007 with an unknown GBS infection status.

101. The aforementioned negligence by said Defendants was a direct and proximate cause of the death of the Plaintiff's baby on or about August 27, 2007.

102. As a direct and proximate result of said Defendants' negligence, Plaintiff has been deprived of the services, earnings, society, comfort and protection of her baby.

103. As a direct and proximate result of said Defendants' negligence, Plaintiff has been generally damaged in the sum to be established according to proof.

104. As a direct and proximate result of the death of the Plaintiff's baby, Plaintiff has incurred reasonable and necessary expenses for the baby's funeral, burial and memorial services in the sum established according to proof at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. An award of compensatory damages in favor of Plaintiff against all Defendants for damages sustained as a result of Defendants' wrongdoing, including interest thereon;

B. An award of pre-judgment and post-judgment interest, as well as Plaintiff's

16
COMPLAINT; CASE NO.

reasonable costs and expenses incurred in this action;

C. An award of extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal and state statutory provisions sued hereunder;

D. Punitive damages in an amount to be determined; and

E. A grant of other such relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury of all issues so triable and as of right.


DATED: October 24, 2008

                        COVINGTON & BURLING LLP


                    By   /s/Christine Saunders Haskett
                        CHRISTINE SAUNDERS HASKETT

                        Attorneys for Plaintiff
                        DONDI VAN HORN

COMPLAINT; CASE NO.