**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DONDI VAN HORN,<br><br>    Plaintiff,<br><br>   vs.<br><br>TINA HORNBEAK, et al,<br><br>    Defendants.<br>_____/ | CASE NO. CV F 08-1622 LJO DLB<br><br>**ORDER ON DEFENDANT MADERA COMMUNITY HOSPITAL'S F.R.Civ.P. 12(b)(6) MOTION TO DISMISS** |

Defendant Madera Community Hospital ("MCH") moves to dismiss the Seventh Cause of Action in First Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6). In the alternative, defendant moves to strike the Seventh Cause of Action. Plaintiff Dondi Van Horn filed an opposition on February 6, 2009. Defendant MCH filed a reply on February 17, 2009. Pursuant to Local Rule 78-230(h), this matter is submitted on the pleadings without oral argument. Therefore, the hearing set for February 24, 2009 is VACATED. Having considered the moving, opposition, and reply papers, as well as the Court's file, the Court issues the following order.[1]

/////

/////

**BACKGROUND**[2]

On July 31, 2007, Ms. Van Horn entered Valley State Prison for Women ("VSPW") inmate when she was 34 weeks pregnant. Plaintiff alleges that during her incarceration and pregnancy, the national standard of care provided that pregnant women should be tested between the 35th and 37th weeks of

---

[1] Plaintiff argues that the motion is untimely. In light of the filing of the amended complaint on December 11, 2008, the Court finds the motion timely.

[2] The factual recitation is derived generally from Ms. Van Horn's operative first amended complaint ("FAC").

1

pregnancy for Group B Streptococcus, a bacterium ("GBS"). (FAC ¶¶18-21.) Before delivery and while incarcerated, plaintiff visited the doctors as VSPW and Madera Community Hospital at least four times, but was never tested for GBS. (FAC ¶ 22-40.) On August 26, 2007, at full term pregnancy, Ms. Van Horn delivered her son by cesarean section. The son's condition deteriorated rapidly, and he died in the late evening of August 27, 2007.

Plaintiff contends that MCH was negligent in failing to screen for this bacteria, to test for this bacteria, to recognize that Plaintiff had this bacteria, and, thereafter, to treat the bacteria and/or possible infection during Plaintiff's prenatal care, labor and delivery. The Seventh Cause of Action alleges intentional infliction of emotional distress based on these facts.

## ANALYSIS AND DISCUSSION

**A.     F.R.Civ.P. 12(b)(6) Motion Standards**

MCH challenges the Seventh Cause of Action for failure to allege extreme and outrageous conduct. A Fed.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). F.R.Civ.P. 12(b)(6) dismissal is proper when "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102 (1957).

In resolving a Rule 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in

the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted). A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). With theses standards in mind, this Court turns to MCH's challenge to plaintiffs' malicious defense claim.

**B.    F.R.Civ.P. 12(f) Standards**

In the alternative, MCH moves to strike the Seventh Cause of Action.

F.R.Civ.P. 12(f) empowers a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Motions to strike may be granted if "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Kentucky Central Life Ins. Co.*, 814 F.Supp. 820, 830 (N.D. Cal. 1992); *Colaprico v. Sun Microsystems, Inc.*, 758 F.Supp. 1335, 1339 (N.D. Cal. 1991). "[T]he function of a [F.R.Civ.P.] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023 (1994). "[A] motion to strike may be used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter of law." *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1479, n. 34 (C.D. Cal. 1996).

An "immaterial" matter has no essential or important relationship to the claim for relief or defenses pleaded. *Fantasy, Inc.,* 984 F.2d at 1527; *Gilbert v. Eli Lilly & Co., Inc.*, 56 F.R.D. 116, 120, n. 5 (D. P.R. 1972); *Fleischer v. A.A.P., Inc.*, 180 F.Supp. 717 (D. Pa. 1958). An "impertinent" allegation is neither responsive nor relevant to the issues involved in the action and which could not be put in issue or given in evidence between the parties. *Gilbert*, 56 F.R.D. at 120, n. 6; *Burke v. Mesta Mach. Co.*, 5 F.R.D. 134 (D. Pa. 1946). An "impertinent" matter consists of statements that do not

pertain and are unnecessary to the issues in question. *Fantasy, Inc.*, 984 F.2d at 1527. With these standards in mind, this Court turns to the Seventh Cause of Action.

## C.     "Extreme and Outrageous" Conduct

Plaintiff's Seventh Cause of Action alleges Intentional Infliction of Emotional Distress.

The elements of a prima facie case of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant; (2) intent to cause, or reckless disregard of the probability of causing, emotional distress; (3) plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendants' outrageous conduct. *Cervantez v. J. C. Penney Co.*, 24 Cal.3d 579, 583, 156 Cal.Rptr. 198 (1979), *superseded by statute as stated in Melendez v. City of Los Angeles*, 63 Cal.App.4th 1, 73 Cal.Rptr.2d 469 (1998). To satisfy the element of "extreme and outrageous conduct," plaintiff must allege facts showing that defendants' conduct was "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Ricard v. Pacific Indemnity Co.*, 132 Cal.App.3d 886, 895, 183 Cal.Rptr. 502 (1982).

### 1.     The Parties' Positions on the Allegations in the First Amended Complaint

MCH argues that plaintiff has not plead conduct on MCH's part which rises to the level of extreme and outrageous conduct. MCH argues that plaintiff has merely alleged a negligence claim for medical malpractice and inserted the words "outrageous," "reckless" and "intentional." The conduct is based on the same failure to diagnose and treat GBS.

Plaintiff's Seventh Cause of Action alleges in relevant part.

> 91. Defendant MCH is liable to Plaintiff for the negligence and recklessness of its employees in caring for, attending to and treating the serious medical needs of Plaintiff under the doctrine of respondeat superior.
>
> 92. At all relevant times, Defendants MCH and its employees, including DR. TINA DHILLON and DR. NAEEM SIDDIQI intentionally or recklessly failed to provide necessary treatment for Plaintiff's medical condition. Specifically, Plaintiff is informed and believes and based thereon alleges that said Defendants intentionally or recklessly failed to test Plaintiff for GBS and intentionally or recklessly failed to provide Plaintiff with necessary antibiotics treatment when she went into labor on or about August 26, 2007 with an unknown GBS infection status.
>
> 93. The aforementioned action by said Defendants constituted a breach of their duty of care to Plaintiff, was undertaken with a reckless disregard of the probability of causing Plaintiff emotional distress, and was a

4

departure from the reasonable standard of care.

Whether a defendant's conduct can reasonably be found to be outrageous is a question of law that must initially be determined by the court; if reasonable persons may differ, it is for the jury to determine whether the conduct was, in fact, outrageous. *Berkley v. Dowds*, 152 Cal.App.4th 518, 534, 61 Cal.Rptr.3d 304, 317 (2007). While the outrageousness of a defendant's conduct normally presents an issue of fact to be determined by the trier of fact, the court may determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *Trerice v. Blue Cross of California*, 209 Cal.App.3d 878, 883, 257 Cal.Rptr. 338, 340 (1989) (no outrageous conduct on allegations that the employer had presented the employee with a termination package, but later withdrew it and kept her as an employee. In *Ricard v. Pacific Indemnity Co.*, plaintiff allege that he suffered severe emotional distress was based on defendants' alleged refusal to timely pay a claim for insurance benefits. The trial court granted a demurrer to the cause of action because of the failure to allege "extreme and outrageous conduct." The appellate court affirmed that a court may decide, as a matter of law, whether a defendant's conduct, as pleaded, could be deemed "outrageous" within that definition. *Ricard*, 132 Cal.App.3d at 895.

Plaintiff argues that she visited MCH on at least four occasions leading up to the birth of her son, and she delivered her baby at the hospital. (FAC ¶¶ 24-41, 43.) Plaintiff alleges time after time, MCH did not test here for GBS. (FAC ¶¶ 30, 33-34, 40, 92.) Plaintiff alleges MCH staff members were aware of GBS, and aware that MCH had no record that she had ever received a GBS test. (FAC ¶¶ 39-40, 91-92.) Plaintiff alleges MCH and its staff ignored the standard of care and "widely known and followed" guidelines promulgated by the Centers for Disease Control and the American College of Obstetricians and Gynecologists recommending the testing of all pregnant women for GBS. (FAC ¶¶ 20-21.) Plaintiff alleges because MCH and its staff were aware of the danger to Ms. Van Horn, and yet continued to ignore her pressing medical need, they acted with intentional or at least reckless disregard for her safety and that of her child. (FAC ¶ 92-93.) Plaintiff argues that she was a vulnerable patient, and as a prisoner, she did not have an option for alternate medical care. Plaintiff argues this failure was all the worse because the death of Ms. Van Horn's baby was needless and could have been prevented had MCH administered a simple and routine GBS test or treated Ms. Van Horn with antibiotics during

delivery. (FAC ¶¶ 18-21, 47.) Plaintiff argues that this callous behavior rose to the level of outrageous conduct and because she was a vulnerable patient.

### 2. Extreme and Outrageous Conduct is More than Failure to Follow the Standard of Care

Turning to the allegations of First Amended complaint, plaintiff states that while a prisoner at VSPW, plaintiff was taken to MCH on August 4, 20, 21, and 26, 2007. Plaintiff alleges that on each of these occasions, "Ms. VAN HORN was not tested for GBS by MCH." (FAC ¶ 31, 33, 34.) During labor, defendant Dhillon asked if plaintiff "knew the results of her GBS test." (FAC ¶¶ 39.) She said she had not been tested and the medical charts showed she had not been tested. (FAC ¶40.)

The Court is asked to resolve whether this conduct, in the first instance, is sufficient for extreme and outrageous conduct. The cause of action alleges that the failure to test for GBS resulted in the death of her baby and caused plaintiff emotional distress.

In the Court's research, very few cases have addressed this issue. A medical diagnosis and treatment advice ordinarily will not be considered outrageous unless they are false and given in bad faith. *Berkley v. Dowds*, 152 Cal. App. 4th 518, 61 Cal. Rptr. 3d 304 (2007) (medical diagnosis and treatment advice will not be considered outrageous unless they are intentionally false and given in bad faith, citing *Trear v. Sills*, 69 Cal.App.4th 1341, 1357-58, 82 Cal.Rptr.2d 281 (1999).) In *Wilkerson v. Butler*, 229 F.R.D. 166, 172 (E.D.Cal. 2005), the Court held a misdiagnosis does not constitute extreme and outrageous conduct. *Compare Thomas v. Hickman*, 2007 WL 470611, 16 (E.D.Cal. 2007) (sufficiently plead extreme and outrageous conduct Defendants' alleged lying to Plaintiff about what had happened, misleading plaintiff about the basis of her current symptoms, and treating Plaintiff for a reproductive problem she could not possibly have had was done with reckless disregard to the probability that conduct would cause severe emotional distress.)

Plaintiff attempts to distinguish *Wilkerson* by arguing that *Wilkerson* involved only an erroneous diagnosis while in plaintiff's case, MCH declined to test her for a dangerous infection despite the risk to her unborn son and the virtual certainty that the test would have prevented his death. (Doc. 60, Opposition p. 9.) In *Wilkerson*, plaintiff alleged that defendant negligently diagnosed her skin cancer as psoriasis. Defendant performed a biopsy but falsely recorded in her medical record that he had given

6

the results to plaintiff, and did not perform the items recorded in her medical record. Given all of the allegations before it, the Court held, "[t]he intentional infliction of emotional distress (fifth) cause of action merely alleges that doctor knew or should have known that his misdiagnosis would cause distress." *Id.* at 172. The Court struck the cause of action.

None of the indicia of the very few cases which have permitted this cause of action to proceed past the pleading stage is present in Ms. Van Horn's case. She was not deliberately lied to as to any diagnosis. Any diagnosis was not deliberately false. She was not intentionally mislead. There are no allegations that she was treated for some condition that did not exist. (See *Thomas v. Hickman*, 2007 WL 470611.) The allegations are absent that show MCH's conduct in failing to find the GBS virus was in and of itself extreme and outrageous.

The failure to find a disease is not extreme and outrageous conduct under California law. In *Ochoa v. Superior Court,* 39 Cal.3d 159 (1985), *limited on other grounds*, *Thing v. La Chusa* 48 Cal.3d 644, 660-668 (1989), medical staff at a juvenile detention facility declined adequate treatment to a teenage boy suffering from acute pneumonia, despite his mother's frantic pleas to be allowed to take him to her own doctor. Yet, the facts in *Ochoa* were held insufficient to support the mother's cause of action for intentional infliction of emotional distress. *Ochoa v. Superior Court*, 39 Cal.3d at 165, fn. 5. Similarly, in *Cortez v. Macias,* 110 Cal.App.3d 640, 650-653 (1980), the court held that the trial court properly granted a nonsuit on a mother's cause of action for intentional infliction of emotional distress based on her child's doctor refusing to come to her home or to the hospital in order to treat the child. In *Cortez*, the mother repeatedly called the doctor during a 24 hour period. The doctor initially examined, diagnosed and prescribed for the child but thereafter did little to assist the child who subsequently died. A nonsuit was upheld on the intentional infliction of emotional distress claim.

Here, as alleged, plaintiff claims she visited the hospital multiple times, the standard of care was to test for GBS, she was ignored, and MCH failed to do what was required it. The failure to find the virus and follow the standard of care, in and of itself, is not extreme and outrageous. The hospital did not do what it was required of it according to the standard of care. Plaintiff has not cited to any case which holds the failure to follow the standard of care is extreme and outrageous conduct. Indeed, California law is the opposite. In light of California case law, plaintiff's cause of action for intentional

1 infliction of emotional distress cannot stand.

### 3. Cased Relied upon by Plaintiff

Plaintiff relies upon three cases that the conduct alleged was outrageous. (Doc. 60, Opposition p. 8.) (1) *Bundren v. Superior Court*, 145 Cal.App.3d 784, 790 (1983), (2) *Pulver v. Avco Fin. Servs.*, 182 Cal.App.3d 622, 637 (1984), and (3) *Alcorn v. Anbro Engineering, Inc.*, 2 Cal 3d 493, 86 Cal Rptr 88 (1970).

Plaintiff cites to *Bundren v. Superior Court,* 145 Cal.App.3d 784, 790 (1983) for the proposition MCH's conduct was outrageous because plaintiff was vulnerable to emotional distress. Plaintiff argues that *Bundren* allowed a plaintiff to proceed on her claim "for IIED against a hospital," but the claim was based upon the hospital's debt collection practices, and not upon conduct related to medical care. Under California law, debt collection practices may be considered extreme and outrageous if the conduct of the creditor is egregious and the relationship with the debtor is abused. *Bundren,* 145 Cal.App.3d at 789-790. In *Bundren*, a surgical patient sued the medical center's debt collector for intentional infliction of emotional distress on the ground that the center's agent abused the special relationship that existed between the hospital and the patient. The patient still under the effects of surgery, and was called by the hospital's debt collector who demanded how the patient was planning to pay her bill. The court held a debt collector who demands payment in a rude and insolent manner does not act in an outrageous manner unless other factors are present, such as where the creditor had knowledge that the debtor was susceptible to emotional distress by reason of some physical or mental condition. *Bundren*, 145 Cal.App.3d at 789-790.

Plaintiff also cites to *Pulver v. Avco Fin. Serv.*, 182 Cal.App.3d 622 which was also a debt collection case. In *Pulver,* plaintiff had alleged that the lender attempted to force the plaintiff to pay the debt of plaintiff's sister, knowing that the debt was not plaintiff's. Plaintiff alleged that defendant's conduct included harassing phone calls and letters over a period of a year, threatens to and ultimately reporting a bad debt to the credit reporting agencies, among other related conduct. The Court found that plaintiff had sufficiently alleged facts. *Pulver*, 182 Cal.App.3d at 637.

Plaintiff also cites to *Alcorn v. Anbro Engineering, Inc.*, 2 Cal 3d 493, 86 Cal Rptr 88 (1970) for the proposition that an abuse of a special relationship can suffice as extreme and outrageous behavior.

8

In *Alcorn*, the court found plaintiff had pleaded a cause of action for intentional infliction of emotional distress where he alleged that in firing plaintiff defendant humiliated and insulted him by shouting racial insults in a rude, violent and insolent manner with knowledge of plaintiff's particular susceptibility to emotional distress. (Id. at pp. 498-499.)  The California Supreme Court has emphasized, however, the significance of the plaintiff's employee status, stating that a plaintiff's status as an employee should entitle him or her to a greater degree of protection from insult and outrage than if he or she were a stranger to defendants.

None of these cases deals with a factual situation involved here.  Plaintiff alleges she was taken to the hospital, but was not tested for GBS on at least four occasions. At best, the allegations show MCH failed to perform the tests knowing that she had not been tested.  The failure to test is not extreme and outrageous conduct.  Plaintiff confuses the <u>results of the alleged wrongful conduct</u>, the death of her child, with the <u>actual conduct itself</u>.  In this case, that plaintiff was "vulnerable" to emotional distress is irrelevant because the <u>conduct itself</u> was not extreme and outrageous.  *See Cochran v. Cochran*, 65 Cal.App.4th 488, 496 (1998) (Even when the defendant knows that the plaintiff is susceptible to emotional distress, "major outrage is still essential to the tort.")

Further, there is a temporal issue as to the occurrence of the emotional distress.  California law does not support a delay in the occurrence of emotional distress.  In *Cortez v. Macias,* 110 Cal.App.3d 640, 653,167 Cal.Rptr. 905 (1980), the mother could not recover from doctor for intentional infliction of emotional distress, despite her repeated calls to him and his failure to come to hospital to treat her child, where evidence did not indicate that her emotional disturbance set in due to doctor's conduct but rather set in after the death of the child.

Here, the emotional distress caused by the failure to diagnose occurred not at the point of the failure to diagnosis, but upon the death of the baby.  Thus, there is a delayed reaction to the conduct.  The conduct of the misdiagnosis/failure to test caused later emotional distress.  California does not recognize such a claim.

**D.    Respondeat Superior Theory of Liability**

Plaintiff argues that MCH cannot be dismissed from the action because MCH is liable on a

1 theory of respondeat superior.  Plaintiff argues that MCH is responsible for the torts of its employees
2 and agents, including hospital staff and nurses.

3 An employer is liable for the wilful and malicious torts of its employees committed in the scope
4 of employment. *Fisher v. San Pedro Peninsula Hospital*, 214 Cal.App.3d 590, 618, 262 Cal.Rptr. 842
5 (1989) (employer liable for employee's acts constituting intentional infliction committed within scope
6 of employment).

7 Here, plaintiff alleges that Dr. Tina Dhillon and Dr. Naeem Siddiqi were physicians at MCH.
8 Plaintiff alleges that "MCH, and its employees, including Dr. Tina Dhillon and Dr. Naeem Siddiqi,
9 failed to provide the necessary treatment for plaintiff."  (FAC ¶91-92.)  Plaintiff alleges that the same
10 conduct, failure to test for GBS, harmed her.  The court must accept the well pleaded allegations as true.
11 *Doe v. U.S.*, 419 F.3d 1058, 1062 (9th Cir. 2005)(On a motion to dismiss for failure to state a claim, the
12 court must construe the complaint in the light most favorable to the plaintiff, taking all her allegations
13 as true and drawing all reasonable inferences from the complaint in her favor.)

14 Neither defendant Dhillon nor defendant Siddiqi moved to dismiss the cause of action for
15 intentional infliction of emotional distress.  Nonetheless, the Court rules, *sua sponte*, that the allegations
16 in the First Amended Complaint cannot support an intentional infliction of emotional distress claim
17 under California law.  Accordingly, the Seventh Cause of Action cannot stand against any party.

## CONCLUSION

19 For the foregoing reasons, the Court GRANTS the motion to dismiss and dismisses the Seventh
20 Cause of Action as to all parties named in that Cause of Action.

22 IT IS SO ORDERED.
23 **Dated:   February 18, 2009**            /s/ Lawrence J. O'Neill
                                         UNITED STATES DISTRICT JUDGE