# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONDI VAN HORN, | CASE NO. CV F 08-1622 LJO DLB |
| Plaintiff, | **ORDER ON PRISON DEFENDANTS' F.R.Civ.P. 12(b)(6) MOTION TO DISMISS** |
| vs. | (Doc. 47.) |
| TINA HORNBEAK, et al, | |
| Defendants. / | |

## INTRODUCTION

Several defendant California Department of Corrections and Rehabilitation ("CDC") officials and physicians[1] seek F.R.Civ.P. 12(b)(6) dismissal of plaintiff Dondi Van Horn's ("Ms. Van Horn's") 42 U.S.C. § 1983 ("section 1983") reckless indifference and related state claims arising from her prenatal care during incarceration and death of her son a day after his birth. Ms. Van Horn responds that her operative first amended complaint ("FAC") satisfactorily alleges her claims. This Court considered the CDC and VSP defendants' F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the February 24, 2008 hearing, pursuant to Local Rule 78-230(h). For the reasons discussed below, this

---

[1] The defendants whose F.R.Civ.P. 12(b)(6) motion is subject to this order are CDC Secretary James E. Tilton ("Secretary Tilton"), CDC Chief Deputy Secretary Robin Dezember ("Chief Deputy Dezember"), CDC Director Jeff Thompson ("Director Thompson"), Warden of Valley State Prison for Women ("VSP") Tina Hornbeak ("Warden Hornbeak"), VSP Chief Medical Officer Virk ("Dr. Virk"), and VSP physician James Heinrich, M.D. ("Dr. Heinrich"). Secretary Tilton, Chief Deputy Dezember and Director Thompson will be referred to collectively as the "CDC defendants." Warden Hornbeak and Drs. Virk and Heinrich will be referred to collectively as the "VSP defendants."

1

Court DENIES dismissal of section 1983 claims against the CDC and VSP defendants and DISMISSES state tort and statutory claims against the VSP defendants.

## BACKGROUND[2]

### Ms. Van Horn's Pregnancy And Treatment At VSP

On July 31, 2007, Ms. Van Horn entered VSP as an inmate when she was 34 weeks pregnant. Dr. Heinrich was "the primary VSP physician responsible for her prenatal care." In August 2007 prior to her delivery, Ms. Van Horn was treated by VSP medical staff, including Dr. Heinrich, for matters related to her pregnancy and a fall. On August 26, 2007, at full term pregnancy, Ms. Van Horn delivered her son by cesarean section. The son's condition deteriorated rapidly, and he died in the late evening of August 27, 2007.

Ms. Van Horn claims that during her VSP medical treatment, she was not given a test for Group B Streptococcus ("GBS") bacteria, which is frequently carried by pregnant women. Ms. Van Horn notes that:

1. If passed to a baby during delivery, GBS has a high likelihood to cause the baby disabilities or death;
2. Antibiotics given to the mother during delivery significantly reduce the risk of GBS contact with the baby during delivery; and
3. Guidelines of the Center for Disease Control and American College of Obstetricians and Gynecologists recommend to test pregnant women for GBS during the 35th to 37th weeks of pregnancy.

### Ms. Van Horn's Claims

Ms. Van Horn faults the VSP medical staff and Dr. Heinrich for failure to test her for GBS to result in her son dying from a perinatal GBS infection which could have been prevented by timely administration of antibiotics. Ms. Van Horn claims that the CDC defendants are accountable for CDC employee actions "pertaining to the custody, care and medical treatment of inmates." The FAC alleges:

1. A (second) section 1983 deliberate indifference cause of action that the CDC defendants

---

[2] The factual recitation is derived generally from Ms. Van Horn's FAC, the target of the CDC and VSP defendants' challenges.

2

          effected a policy and custom of deliberate indifference by failing to provide adequate prenatal care, including screening for GBS infection;

2. A (third) deliberate indifference cause of action that the VSP defendants acted with deliberate indifference by failing to administer routine GBS screening to Ms. Van Horn and antibiotics during labor;

3. A (fourth) professional negligence cause of action that Dr. Heinrich breached his duty of care by failing to conduct routine GBS infection screening of Ms. Van Horn;[3]

4. A (sixth) intentional infliction of emotional distress cause of action that Drs. Virk and Heinrich intentionally or recklessly failed to provide standardized prenatal care to Ms. Van Horn with reckless disregard of the probability to cause her emotional distress;

5. An (eighth) wrongful death cause of action that Drs. Virk and Heinrich negligently failed to administer routine GBS infection screening and antibiotics and to locate Ms. Van Horn's GBS infection to result in her son's death; and

6. A (tenth) statutory failure to summon medical care cause of action that the VSP defendants failed to take reasonable action to summon standardized prenatal care, including routine GBS infection screening.

The FAC seeks, among other things, compensatory and punitive damages.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion Standards

The CDC defendants seek F.R.Civ.P. 12(b)(6) dismissal of the section 1983 deliberate indifference claim that at the time of alleged wrongdoing, they lacked "authority to adopt, implement, or control the medical care of inmates." The VSP defendants seek F.R.Civ.P. 12(b)(6) dismissal of the section 1983 deliberate indifference, tort and statutory claims in the absence of necessary facts and elements.

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception

---

[3] Based on the CDC and VSP defendants' papers, this Court surmises that Dr. Heinrich does not seek F.R.Civ.P. 12(b)(6) dismissal of the (fourth) professional negligence cause of action.

3

of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). F.R.Civ.P. 12(b)(6) dismissal is proper when "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102 (1957).

In resolving a F.R.Civ.P. 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted). A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Van Winkle*, 290 F.Supp.2d at 1162, n. 2. A court may also consider "documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998) (quoting *Branch v. Tunnell*, 14 F.3d

4

449, 454 (9th Cir. 1994)). A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)). Moreover, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997). A court need not accept "as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

With these standards in mind, this Court turns to the CDC and VSP defendants' challenges to the claims against them.

## Section 1983 Deliberate Indifference

The CDC defendants, Warden Hornbeak and Dr. Virk[4] initially attack Ms. Van Horn's deliberate indifference claims on grounds of an insufficient causal connection between them and Ms. Van Horn's alleged injury.

Section 1983 provides in pertinent part:

> Every person who, under the color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

42 U.S.C. § 1983.

To state a section 1983 claim, a plaintiff must plead that: (1) defendants acted under color of state law at the time the complained of act was committed; and (2) defendants deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Gibson v. United States,* 781 F.2d 1334, 1338 (9th Cir. 1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928 (1987). Section 1983 requires that there be an actual connection or link between the actions of defendant and deprivation allegedly suffered. *See Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978); *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598 (1976). The Ninth Circuit Court of Appeals has held that

---

[4] Based on the CDC and VSP defendants' papers, this Court surmises that Dr. Heinrich does not seek F.R.Civ.P. 12(b)(6) dismissal of the (third) section 1983 deliberate indifference cause of action.

5

"[a] person 'subjects' another to deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). A section 1983 plaintiff "must state the allegations generally so as to provide notice to the defendants and alert the court as to what conduct violated clearly established law." *Preschooler II v. Clark County School Bd. of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007).

Liability for a constitutional tort "arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Generally, supervisory personnel are not liable under section 1983 for actions of their employees under a respondeat superior theory, and thus, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged and proved. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2883 (1979). To establish a prima facie case of supervisory liability, a plaintiff must show facts to indicate that the supervisory defendant either: (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or implemented a policy "so deficient that the policy itself 'is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Taylor*, 880 F.2d at 1045; *see also Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (ratification, poor investigation, or failure to terminate series of events may make supervisor liable). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (1982).

### *Medical Care Receivership*

Ms. Van Horn contends that the FAC alleges that the CDC defendants "promulgated or implemented a constitutionally deficient policy" in that they "effected a policy and custom of deliberate indifference to the serious medical needs of the prisoners at VSPW, including Plaintiff, which was manifested in incompetent and inadequate medical staffing, inaccurate and substandard medical record-keeping, and failure to provide adequate, standardized prenatal care and monitoring, including routine

screening for vaginal GBS infection."

The CDC defendants claim an absence of a causal connection between them and Ms. Van Horn's alleged constitutional deprivation due to federal receivership for executive management of California prison health care. In *Plata v. Schwarzenegger*, N.D. Cal. Case No. CV 01-1351, the U.S. District Court, Northern District of California, issued its February 14, 2006 order ("*Plata* order") to appoint a receiver to "provide leadership and executive management of the California prison medical health care delivery system with the goals of restructuring day-to-day operations and developing, implementing, and validating a new, sustainable system that provides constitutionally adequate medical care" to inmates. The *Plata* order empowered the receiver "to control, oversee, supervise, and direct all administrative, personnel, financial, accounting, contractual, legal, and other operational functions of the medical delivery component of CDC." The *Plata* order granted the receiver "power to hire, fire, suspend, promote, transfer, discipline, and take all other personnel actions regarding CDC employees or contract employees who perform services related to the delivery of medical care" to inmates. The *Plata* order further granted the receiver "all powers vested by law in the Secretary of the CDC as they relate to the administration, control, management, operation, and financing of the California prison medical health care system." To that end, the *Plata* order "suspended" for the receivership's duration, the CDC Secretary's "exercise of the above powers."

The CDC defendants fault Ms. Van Horn's section 1983 deliberate indifference claim against them in that at the time of alleged wrongs, the CDC defendants lacked power or authority to implement policies, decisions and action for medical treatment, including prenatal GBS screening at VSP. The CDC defendants argue that the *Plata* order stripped the CDC Secretary and his subordinates of "all authority regarding implementation of medical-care policies at California prisons" as of February 14, 2006 and that such authority rested with the receiver appointed by the *Plata* order. As such, the CDC defendants conclude that they could not have violated Ms. Van Horn's constitutional rights.

Ms. Van Horn argues that the CDC defendants overstate the *Plata* order's "powers" granted to the receiver in that the receiver did not take control over medical care of CDC inmates and given that CDC Secretary Tilton remains liable to ensure the provision of constitutionally adequate medical care to CDC inmates. Ms. Van Horn notes that the *Plata* order contemplates only suspension during

receivership of the CDC Secretary Tilton's powers of "administration, control, management, operation, and financing."

Ms. Van Horn points to *In re Estevez*, __ Cal.App.4th __, 83 Cal.Rptr.3d 479, 493 (2008), where the California Court of Appeal explained:

> . . .we do not read the orders in *Plata* so broadly that we can conclude, with certainty, that responsibility for all inmate medical care has been removed from the state, regardless of the adequacy of care provided by a delegated authority. In part, we so conclude because the state, and through its appointed representative the warden, cannot abdicate its constitutional responsibility to provide adequate medical care, concomitant with which is the duty to assure said care is not dispensed without any regard for the effect on the prison system as a whole. That responsibility is uniquely that of the warden as representative of the state, as opposed to being that of the Receiver. In short, the existence of the orders in *Plata*, and the appointment of the Receiver, do not relieve the state of its constitutional responsibility to determine whether adequate care is in fact being provided, or whether the proposed medical care or actions to facilitate that care are inconsistent with the state's overall constitutional responsibility for public safety and welfare.

Based on *Estevez*, Ms. Van Horn concludes that the CDC defendants maintain a "duty to provide day-to-day oversight of constitutionally adequate medical care."

The CDC defendants suggest that the *Plata* order usurped them of all powers over inmate medical care. This Court agrees with Ms. Van Horn that the CDC defendants overstate the *Plata* order's effects. The *Plata* order appointed the receiver to "provide leadership and executive management," including "administration, control, management, operation, and financing of the California prison health care system." Taken to its extreme, the CDC defendants' argument would leave the CDC defendants with nothing to do. As the *Estevez* court observed, the *Plata* order does not relieve the state, and in turn the CDC defendants, of constitutional responsibility for determination of adequate inmate medical care. Moreover, the CDC defendants remain liable for pre-receivership implementation or promulgation of constitutionally deficient policies. The *Plata* order does not strip the CDC defendants of section 1983 liability.

### *Warden Hornbeak And Dr. Virk's Absence Of Causation*

Warden Hornbeak and Dr. Virk fault the (third) section 1983 deliberate indifference cause of action for failing to allege facts that their conduct caused injury to Ms. Van Horn. Ms. Van Horn responds that the cause of action adequately alleges necessary elements for the claim.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must

8

show 'deliberate indifference' to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285 (1976)). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi*, 391 F.3d at 1057 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct.1970 (1994). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." *Toguchi*, 391 F.3d at 1057 (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. 825, 834, 114 S.Ct. 1970. Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

The (third) deliberate indifference cause of action alleges that Warden Hornbeak and Dr. Virk acted with deliberate indifference to Ms. Van Horn's "serious medical needs" by failing to provide routine GBS screening. Warden Hornbeak and Dr. Virk fault the claim's absence of allegations that Warden Hornbeak and Dr. Virk knew that Ms. Van Horn had a serious medical condition and purposefully ignored or failed to respond to her medical need or that knowledge of Ms. Van Horn's serious medical condition could be imputed to them. Warden Hornbeak and Dr. Virk argue that the claim fails to satisfy elements for supervisory liability in the absence of facts that Warden Hornbeak and Dr. Virk knew of constitutional violations and failed to prevent them or that Warden Hornbeak and Dr. Virk implemented a policy which amounted to a constitutional deprivation.

Ms. Van Horn responds that failure to provide a GBS test to a pregnant woman may cause her to suffer the loss of child to constitute "a serious medical need for pregnant inmates." "[T]he existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, . . . the presence of a medical condition that significantly affects an individual's daily activities, and . . . the

9

existence of chronic or substantial pain" are indications of a serious medical need. *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059-1060 (9th Cir. 1992), overruled on other grounds, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). Ms. Van Horn points to the FAC's allegations that leading up to her son's birth, she experienced lower back pain, symptoms of pre-term labor, vaginal leakage, cramps, nausea, influenza-like symptoms, dehydration, and diarrhea. Ms. Van Horn argues that these symptoms "suggested problems with her pregnancy and demanded further examination." Ms. Van Horn asks this Court to infer "knowledge of the risk of harm associated with GBS infection from the fact that GBS testing is recommended under national guidelines for the Centers of Disease Control and American College of Obstetricians and Gynecologists."

The presence of a GBS infection constitutes as an injury of which a reasonable doctor would find worthy of comment or treatment. As such, a GBS infection is a serious medical need. However, the FAC alleges insufficient facts that Warden Hornbeak and Dr. Virk would be in position to know of Ms. Van Horn's condition, that is, she was pregnant and at risk of GBS infection. As such, attention turns to whether the FAC sufficiently alleges that Warden Hornbeak and Dr. Virk implemented a policy to result in deliberate indifference.

Ms. Van Horn points to the FAC allegation that "in failing to have in place and/or by repeatedly failing to follow a policy mandating the testing of pregnant women for GBS" pursuant to national guidelines for the Centers of Disease Control and American College of Obstetricians and Gynecologists, Warden Hornbeak and Dr. Virk "exhibited substantial deliberate indifference to the serious medical needs of Ms. VAN HORN." In short, the absence of GBS testing is a policy of substantial deliberate indifference, according to Ms. Van Horn.

At this point, this Court is not called upon to determine the merits of the absence of GBS testing. The FAC alleges that GBS testing is a national standard to address a serious medical need. In turn, a policy not to address a serious medical need constitutes a constitutional deprivation. The FAC adequately alleges that Warden Hornbeak and Dr. Virk implemented a policy to repudiate constitutional rights to permit survival of the deliberate indifference claim against them.

///

**Intentional Infliction Of Emotional Distress**

Drs. Virk and Heinrich seek to dismiss the (sixth) intentional infliction of emotional distress cause of action for failure to allege facts of their "extreme and outrageous" conduct. Ms. Van Horn responds that the FAC sufficiently alleges that Drs. Virk and Heinrich "acted outrageously with reckless disregard to the probability of causing Ms. Van Horn severe emotional distress through the avoidable death of her newborn baby."

The elements of a cause of action for intentional infliction of emotional distress are: (1) defendant's outrageous conduct; (2) defendant's intention to cause, or reckless disregard of the probability of causing, emotional distress; (3) plaintiff's suffering severe or extreme emotional distress; and (4) an actual and proximate causal link between the tortious (outrageous) conduct and the emotional distress. *Nally v. Grace Community Church of the Valley*, 47 Cal.3d 278, 300, 253 Cal.Rptr. 97, 110 (1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1644 (1989); *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 155, n. 7, 233 Cal.Rptr. 308 (1987).[5] The "[c]onduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminister*, 32 Cal.3d 197, 209, 185 Cal.Rptr. 252 (1982) (quoting *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 593, 156 Cal.Rptr.198 (1979)). Conduct is extreme and outrageous when it is of a nature which is especially calculated to cause, and does cause, mental distress. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 617, 262 Cal.Rptr. 842, 857 (1989).

To support an intentional infliction of emotional distress claim, the conduct must be more than "intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." *Christensen v. Superior Court*, 54 Cal.3d 868, 903, 2 Cal.Rptr.2d 79 (1991). The California Supreme Court has further explained:

> "The law limits claims of intentional infliction of emotional distress to egregious conduct toward plaintiff proximately caused by defendant." . . . The only exception to this rule

---

[5] Other California courts have identified the elements as "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct." *Cochran v. Cochran,* 65 Cal.App.4th 488, 494, 76 Cal.Rptr.2d 540 (1998) (citing *KOVR-TV, Inc. v. Superior Court,* 31 Cal.App.4th 1023, 1028, 37 Cal.Rptr.2d 431 (1995)).

> is that recognized when the defendant is aware, but acts with reckless disregard, of the plaintiff and the probability that his or her conduct will cause severe emotional distress to that plaintiff. . . . Where reckless disregard of the plaintiff's interests is the theory of recovery, the presence of the plaintiff at the time the outrageous conduct occurs is recognized as the element establishing a higher degree of culpability which, in turn, justifies recovery of greater damages by a broader group of plaintiffs than allowed on a negligent infliction of emotional distress theory. . . .

*Christensen*, 54 Cal.3d at 905-906, 2 Cal.Rptr.2d 79 (citations omitted.)

"Whether a defendant's conduct can reasonably be found to be outrageous is a question of law that must initially be determined by the court; if reasonable persons may differ, it is for the jury to determine whether the conduct was, in fact, outrageous." *Berkley v. Dowds,* 152 Cal.App.4th 518, 534, 61 Cal.Rptr.3d 304 (2007). There is no bright line standard for judging outrageous conduct, and a case-by-case appraisal of conduct is required. *Cochran*, 65 Cal.App.4th at 494, 76 Cal.Rptr.2d 540.

Drs. Virk and Heinrich note that medical diagnosis and treatment advice are not outrageous unless they are false and are given in bad faith. Drs. Virk and Heinrich argue that their alleged intentional and reckless failure to provide GBS screening is insufficient to support an intentional infliction of emotional distress claim. Dr. Virk notes the absence of allegations of his treatment or extreme and outrageous conduct. Dr. Heinrich contends that the allegations against him "suggest nothing more than negligence." Drs. Virk and Heinrich conclude that the intentional infliction of emotional distress claim lacks allegations of conduct calculated or intended to cause Ms. Van Horn emotional distress.

Ms. Van Horn responds that the intentional infliction of emotional distress claim against Dr. Heinrich suffices in that he ignored "widely known and followed" guidelines recommending to test "all pregnant women of GBS." Ms. Van Horn points to FAC allegations that despite his examinations of Ms. Van Horn, Dr. Heinrich failed test for GBS which "has a high likelihood of causing the baby serious long term physical or mental disabilities or, in many cases, death." Ms. Van Horn concludes that the FAC allegations, taken together, demonstrate that Dr. Heinrich "refused to offer a simple, routine, and necessary GBS test" and "to respond to signs that Ms. Van Horn's pregnancy was endangered." Turning to Dr. Virk, Ms. Van Horn relies on FAC allegations that he failed to have in place and/or repeatedly failed to follow a policy mandating GBS testing.

This Court agrees with Drs. Heinrich and Virk that the gist of the FAC allegations sounds in

negligence rather than intentional tort. Ms. Van Horn asks this Court to conclude that the absence of GBS testing, under the alleged circumstances (prison medical care), constitutes outrageous, intolerable conduct. This Court is not in a position to make such a legal leap and conclude that the absence of GBS testing was calculated to cause Ms. Van Horn severe emotional distress. As such, the (sixth) intentional infliction of emotional distress cause of action is subject to F.R.Civ.P. 12(b)(6) dismissal, and Ms. Van Horn points to no further facts or allegations to warrant an attempt to amend the claim.

## Wrongful Death

Dr. Virk criticizes the (eighth) wrongful death cause of action for failure to allege facts of his treatment or care of Ms. Van Horn to give rise to a duty of care to her.[6] Ms. Van Horn responds that the FAC alleges a sufficient wrongful death claim against Dr. Virk in that he negligently supervised Dr. Heinrich and other employees, negligently controlled Ms. Van Horn's medical records, and negligently failed to implement a policy to require GBS testing.

"Wrongful death is a statutorily created cause of action for pecuniary loss brought by heirs against a person who causes the death of another by a wrongful act or neglect. It is original in nature and does not represent a right of action that the deceased would have had if the deceased had survived the injury." *Jacoves v. United Merchandising Corp.*, 9 Cal.App.4th 88, 105, 11 Cal.Rptr.2d 468 (1992); *see* Cal. Code Civ. Proc., § 377.30 ("A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest . . .") "It is a cause of action for the heir who recovers for the pecuniary loss suffered on account of the death of the relative." *Jacoves*, 9 Cal.App.4th at 105, 11 Cal.Rptr.2d 468.

In a wrongful death action resulting from negligence, the complaint must contain allegations as to all the elements of actionable negligence. *Jacoves,* 9 Cal.App.4th at 105, 11 Cal.Rptr.2d 468. Negligence involves the violation of a legal duty imposed by statute, contract or otherwise, by the defendant to the person injured, e.g., the deceased in a wrongful death action. *Jacoves,* 9 Cal.App.4th at 105, 11 Cal.Rptr.2d 468. To establish negligence liability, a fundamental principle of tort law is that there must be a legal duty owed to the person injured and a breach of that duty which is the proximate

---

[6] Based on the CDC and VSP defendants' papers, this Court surmises that Dr. Heinrich does not seek F.R.Civ.P. 12(b)(6) dismissal of the (eighth) wrongful death cause of action.

1  cause of the resulting injury. *Jacoves,* 9 Cal.App.4th at 114, 11 Cal.Rptr.2d 468. "The existence of a
2  legal duty is a question of law which is simply an expression of the sum total of the policy considerations
3  that lead a court to conclude that a particular plaintiff is entitled to protection." *Jacoves,* 9 Cal.App.4th
4  at 114, 11 Cal.Rptr.2d 468. "Absent a special relationship giving rise to a duty to act, a person is under
5  no duty to take affirmative action to assist or protect another, no matter how great the danger in which
6  the other is placed, or how easily he could be rescued." *Clarke v. Hoek,* 174 Cal.App.3d 208, 215, 219
7  Cal.Rptr. 845 (1985).

8  Nonetheless, "there are judicially created exceptions which impose a duty on a defendant to
9  control the conduct of others when the defendant stands in some special relationship either with the
10 person whose conduct needs to be controlled or with the person who is the foreseeable victim."
11 *Jacoves,* 9 Cal.App.4th at 114, 11 Cal.Rptr.2d 468. "In creating these exceptions, the judiciary has not
12 rejected out of hand the common law rule of nonliability for nonfeasance. Instead, the judiciary has
13 increased the number of situations where affirmative duties are imposed by expanding the list of special
14 relationships." *Jacoves,* 9 Cal.App.4th at 114, 11 Cal.Rptr.2d 468. "Generally, recognized categories
15 of special relationships between a defendant and a person whose conduct needs to be controlled, as well
16 as whose conduct defendant has the ability to control, include: parent and child, master and servant and
17 one who takes charge of a third person who he or she knows or should know is likely to cause bodily
18 harm to himself or herself or others if not controlled." *Jacoves,* 9 Cal.App.4th at 114, 11 Cal.Rptr.2d
19 468.

20 Dr. Virk faults the (eighth) wrongful death cause of action's failure to allege "any relationship,"
21 let alone a doctor-patient relationship, between Ms. Van Horn and Dr. Virk. Dr. Virk notes the absence
22 of allegations that he was involved in Ms. Van Horn's medical care, created a situation to place Ms.
23 Horn at risk or increased peril, or had special relationship with her to give rise to a duty.

24 Ms. Horn responds that Dr. Virk "had a special relationship with Heinrich and the VSP medical
25 staff as their employer and supervisor, as well as those patients who could be harmed through Virk's
26 staff's incompetence." Ms. Van Horn accuses Dr. Virk of negligent failure to administer routine GBS
27 screening by failing to monitor and supervise Dr. Heinrich's treatment and to intervene to stop Dr.
28 Heinrich's "abuse." Ms. Horn further accuses Dr. Virk of inadequate records maintenance based on

14

VSP's inability to locate ultrasound and GBS test results pursuant to Madera Community Hospital's request. Ms. Van Horn faults Dr. Virk's failure to implement mandatory GBS testing to result in his guidance of "his staff to offer substandard care."

Ms. Van Horn appears to obscure Dr. Virk's duties owed to Ms. Van Horn and in turn her son. Of key importance, the FAC fails to allege a direct physician-patient relationship between Dr. Virk and Ms. Van Horn and/or her son. Dr. Heinrich, not Dr. Virk, maintained a treating relationship with Ms. Van Horn. Ms. Van Horn attempts to extrapolate wrongful death-connected duties to Dr. Virk arising from his VSP chief medical officer duties. The FAC fails to substantiate a sufficient relationship between Dr. Virk and Ms. Van Horn (and in turn her son) to impose wrongful death liability on Dr. Virk. The FAC does not allege a special relationship between Dr. Virk and Ms. Van Horn in the absence of a treating relationship. Dr. Virk's duties neither reach nor filter down to a sufficient level to impose wrongful death liability on Dr. Virk. Ms. Van Horn points to no specific FAC allegation that Dr. Virk directly supervised Dr. Heinrich or others involved in Ms. Van Horn's care. The (eighth) wrongful death cause of action fails as to Dr. Virk, and Ms. Van Horn points to no additional facts or allegations to resurrect the claim as to Dr. Virk by amendment.

### Failure To Summon Medical Care

The VSP defendants argue that the (tenth) failure to summon medical care cause of action fails as a matter of law because Drs. Virk and Heinrich are physicians and because it fails to allege facts that Warden Hornbeak was aware of Ms. Van Horn's GBS screening status or need for GBS screening.

California Government Code section 845.6 ("section 845.6") provides that although a public employee is not liable for injury caused by failure to furnish or obtain medical care for an inmate, a public employee is liable if he/she "knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." To state a section 845.6 claim, a inmate must establish: (1) the public employee knew or had reason to know of the need, (2) for immediate medical care, and (3) failed to reasonably summon such care. *Jett v. Penner*, 439 F.3d 1091, 1099 (9th Cir. 2006). "Liability under section 845.6 is limited to serious and obvious medical conditions requiring immediate care." *Watson v. State*, 21 Cal.App.4th 836, 26 Cal.Rptr.2d 262, 265 (1993). Section 845.6 "does not impose a duty to monitor the quality of care provided." *Jett*, 439

1  F.3d at 1099. The section 845.6 duty to provide medical care to inmates is limited to when there is
2  actual or constructive knowledge that the inmate needs immediate medical care. *Lucas v. City of Los*
3  *Angeles*, 47 Cal.App.4th 277, 288, 54 Cal.Rptr.2d 655 (1996). "The public employee must know or
4  have reason to know of the need of immediate medical care and fail to summon such care." *Lucas*, 47
5  Cal.App.4th 277, 288, 54 Cal.Rptr.2d 655.

6  Drs. Virk and Heinrich argue that there is no section 845.6 claim where an inmate is treated by
7  a physician. Drs. Virk and Heinrich cite to *Nelson v. State of California*, 139 Cal.App.3d 72, 81, 188
8  Cal.Rptr. 479 (1983), where the California Court of Appeal addressed section 845.6:

> Once a practitioner has been summoned to examine and treat a prisoner, he or she is under a duty to exercise that degree of diligence, care, and skill such as is ordinarily possessed by other members of the profession. Failure to do so is malpractice. (*Burns v. American Casualty Co.*, 127 Cal.App.2d 198, 203, 127 Cal.Rptr. 198.) Failure of a practitioner to prescribe or provide necessary medication or treatment to one he or she has been summoned to assist is a breach of such duty and as such is also medical malpractice and clearly, as a matter of the plain meaning of the statutory language, cannot be characterized as a failure to summon medical care.

14  As a reminder, the (tenth) failure to summon medical care cause of action alleges that the VSP
15 defendants knew that Ms. Van Horn was in immediate need of routine GBS screening and "failed to take
16 reasonable action to summon such care." Drs. Virk and Heinrich note that as physicians, they were
17 caring for Ms. Van Horn and that their alleged wrongs cannot sound in "failure to summon medical care"
18 in that the FAC alleges Drs. Virk and Heinrich provided "inadequate or insufficient" treatment. Warden
19 Hornbeak faults the claim for failure to allege facts that Warden Hornbeak knew or had reason to know
20 of Ms. Van Horn's "need for immediate medical care." Warden Hornbeak notes the absence of alleged
21 facts that she was aware of Ms. Van Horn's medical condition or had been informed that Ms. Van Horn
22 lacked GBS screening.

23  As to Warden Hornbeak, Ms. Van Horn relies on the FAC's allegation that Warden Hornbeak
24 "knew or had reason to know that Plaintiff DONDI VAN HORN was in immediate need of standardized
25 prenatal care and monitoring, including screening for vaginal GBS infection." Ms. Van Horn notes the
26 FAC alleges that as VSP warden, Warden Hornbeak bore responsibility "for administering, managing
27 and supervising the health care delivery system" at VSP and including "establishing and administering
28 policies for the care and treatment of medical needs of all inmates." Ms. Van Horn concludes that

Warden Hornbeak "had the responsibility to know that Ms. Van Horn was pregnant and thus needed standardized prenatal care."

Ms. Van Horn relies on generalities and legal conclusions to attempt to plead a section 845.6 claim against Warden Hornbeak. The FAC lacks sufficient facts to demonstrate that Warden Hornbeak knew or had reason to know Ms. Van Horn required GBS testing. The FAC does not allege that Warden Hornbeak is a doctor or has special knowledge of prenatal care. Ms. Van Horn neither contends nor demonstrates that GBS infection is an obvious medical condition for section 845.6 purposes. In the absence of sufficient allegations of actual or constructive knowledge of an immediate need for GBS testing, Warden Hornbeak is not subject to a section 845.6 claim.

Turning to Drs. Virk and Heinrich, Ms. Van Horn argues that they are subject to section 845.6 liability for failure to provide care "for a known medical need" in that they failed to provide her "a GBS test that is needed by all pregnant women." Ms. Van Horn argues that the FAC alleges a section 845.6 claim against Drs. Virk and Heinrich who "knew or had reason to know that Ms. Van Horn was in immediate need of a specific medical procedure" but "failed to summon such care," a GBS test. Ms. Van Horn contends that such allegations suffice as to Dr. Virk although he did not treat Ms. Van Horn.

There are no allegations in the FAC that Drs. Virk and Heinrich knew she had a GBS infection. The FAC alleges that Ms. Van Horn was pregnant and experienced complications. Ms. Van Horn's claims are for negligence in failure to diagnose her condition, not failure to treat a known condition. The FAC points to nothing to put Drs. Virk and Heinrich on actual or constructive knowledge of her GBS condition. The failure to satisfy an alleged standard of care to test for GBS is an issue different than that subject to section 845.6 liability. The FAC fails to allege a viable section 845.6 claim against the VSP defendants, and Ms. Van Horn points to nothing to warrant an attempt to amend the claim.

**CONCLUSION AND ORDER**

For the reasons discussed below, this Court:

1. DENIES dismissal of the (second) section 1983 deliberate indifference cause of action against the CDC defendants;

2. DENIES dismissal of the (third) section 1983 deliberate indifference cause of action against Warden Hornbeak and Dr. Virk;

3.  DISMISSES with prejudice the (sixth) intentional infliction of emotional distress cause of action against Drs. Virk and Heinrich;

4.  DISMISSES with prejudice the (eighth) wrongful death cause of action against Dr. Virk; and

5.  DISMISSES with prejudice the (tenth) section 845.6 cause of action against the VSP defendants.

IT IS SO ORDERED.

**Dated:    February 19, 2009**         **/s/ Lawrence J. O'Neill**
                                                            UNITED STATES DISTRICT JUDGE