# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DONDI VAN HORN, | ) | 1:08cv1622 LJO DLB |
| | ) | |
| | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART PLAINTIFF'S MOTION |
| Plaintiff, | ) | TO COMPEL |
| | ) | (Document 104) |
| v. | ) | |
| | ) | ORDER DENYING PROTECTIVE |
| TINA HORNBEAK, et al., | ) | ORDER AS MOOT |
| | ) | (Document 111) |
| | ) | |
| Defendants. | ) | |

Plaintiff Dondi Van Horn ("Plaintiff") filed the instant Motion to Compel Further Depositions on August 7, 2009. Defendant Madera Community Hospital ("MCH") filed a related Motion for Protective Order Motion to File a Third Amended Complaint on August 12, 2009. The motion was heard on September 18, 2009, before the Honorable Dennis L. Beck, United States Magistrate Judge. E. Daniel Robinson and Jesse Goodman appeared on behalf of Plaintiff. Diana Esquivel appeared on behalf of Defendants Tina Hornbeak, James Tilton, Robin Dezember, Jeff Thompson, Pal Virk, M.D., and James Henrich, M.D. ("CDCR Defendants"). Christopher Bell appeared on behalf of Defendant Naeem Siddiqi, M.D. Travis Stokes appeared on behalf of Defendant Tina Dhillon, M.D. Mario Beltramo appeared on behalf of Defendant Madera Community Hospital ("MCH").

1

**BACKGROUND**

Plaintiff filed this civil rights action on October 24, 2008. After the Court granted leave to amend, she filed a Second Amended Complaint ("SAC") on June 25, 2009, alleging deliberate indifference to a serious medical need in violation of 42 U.S.C. section 1983, medical malpractice and wrongful death. Plaintiff has been granted leave to file a Third Amended Complaint.

The parties and the Court are familiar with the facts underlying this action. The instant discovery dispute is centered around the depositions of MCH's Rule 30(b)(6) witnesses, which took place on July 27, 2009. In response to Plaintiff's June 26, 2009, deposition notice, MCH produced Donna Aldrich, R.N., Lisa Essex and Vice President Mark Foote.

**DISCUSSION**

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides as follows:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.... The information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

As a threshold matter, and as discussed at the hearing, this Court places great emphasis on the admonishment in the Federal Rules that an instruction not to answer not be given unless the instruction is necessary to preserve a privilege, enforce a court-ordered limitation, or present a motion to terminate or limit the deposition. Fed. R. Civ. Proc. 30(c)(2). With this in mind, the Court will review the questions at issue.

A.   <u>Nurse Aldrich</u>

Nurse Aldrich was produced to testify about numerous topics, including policies and practices related to GBS testing, Plaintiff's course of care at MCH, information concerning the number of prisoners treated at MCH and information concerning the number of babies who contract GBS at MCH.

MCH's counsel instructed Nurse Aldrich not to answer numerous questions based on an objection to premature disclosure of expert witness testimony. Citing Federal Rule of Civil Procedure 30(c)(2) and contending that the subject questions called for expert testimony, MCH believes that it was entitled to instruct her not to answer in order to enforce the Court's scheduling orders, the most recent of which sets the expert disclosure deadline as December 11, 2009, and the expert discovery cut off as January 29, 2010.

*Questions Regarding the Standard of Care*

- Is it the standard of care to have a GBS Prevention Policy?
- Are you aware of what the standard of care is for GBS Prevention?
- Are the CDC guidelines the standard of care in this field?

MCH objected based on its belief that questions regarding the standard of care require expert testimony. Plaintiff believes that Nurse Aldrich's opinions as to the standard of care are relevant to MCH's knowledge and/or "state of mind" insofar as it was aware of the standard of care and failed to provide it.

The Court agrees that questions asking Nurse Aldrich to opine on the standard of care, to the extent her answers are even relevant, are within the purview of expert testimony. In contrast, Nurse Aldtrich could answer questions as to the *policies and practices* related to GBS testing, which are in fact the topics set forth in the deposition notice for which she was designated. The questions, as phrased, are therefore expert issues and need not be answered.

*Questions Regarding Policies*

- Do physicians have an affirmative obligation under the policy to check pregnant women's charts?
- When a patient presents to a physician and it's not a scheduled visit, does a physician have the obligation to test the patient for GBS?
- Did either Dr. Dhillon or Dr. Siddiqi ever fail to comply with MCH's GBS Prevention Policy?
- Is it the patient's physician's responsibility to keep track of GBS testing?

MCH again argues that these questions call for expert testimony because they ask Nurse Aldrich to interpret a policy relating to a physician's duty, which in turn implicates the standard of care. As discussed above, however, Nurse Aldrich can testify as to the *policies* required at MCH. These questions specifically ask for the policies at issue and concern the very topics for which Nurse Aldrich was designated by MCH as the person most knowledgeable. The questions

3

1  do not, as MCH suggests, require Nurse Aldrich to testify as to the performance of the doctors

2  and whether that performance met the standard of care.

3        Accordingly, with a clarification that these questions only concern the requirements of the

4  policies at issue and do not relate to the standard of care, the questions can be answered.  MCH

5  shall produce Nurse Aldrich for a telephone deposition, scheduled by the parties.  If the parties

6  cannot agree to the terms of follow-up questioning, if necessary, they may contact the Court.

7        *Questions Regarding Cause of Death, Etc.*

8        - What was the cause of Ms. Van Horn's baby's death?
      - Are you aware of whether or not Ms. Van Horn's baby died from GBS?

9        - Do you know if Ms. Van Horn's baby's death was preventable or not?

10        MCH argues, and the Court agrees, that Nurse Aldrich is not in a position to opine about

11  cause of death issues.  Moreover, although Plaintiff believes that these questions go to MCH's

12  state of mind, MCH's state of mind *after* the infant's death is not relevant to the instant action.

13  Nurse Aldrich is therefore not required to answer this line of questioning.

14  B.    <u>Lisa Essex</u>

15        All objections during Ms. Essex's deposition were based on California's peer review

16  privilege.  While the state of the law at the time of the deposition may have been unclear, the

17  Court has now ruled on the issue and determined that the state privilege is not applicable.  The

18  questions must therefore be answered.

19        During the hearing, Plaintiff indicated that she is in the process of reviewing MCH's

20  document production and acknowledged that the documents may provide answers to some of

21  these questions.  Accordingly, after review of the documents, follow-up questions will be

22  allowed if Plaintiff determines that further questioning is necessary.  Again, if the parties cannot

23  agree on the terms of follow-up questioning, they may involve the Court.

24  C.    <u>Mark Foote</u>

25        Mark Foote, Vice President of MCH, was designated to discuss certain aspects of the

26  contract between CDCR and MCH, as well as information concerning the cost of testing

27  pregnant women for GBS and offering prophylactic antibiotics.  During his deposition, however,

28  he was unable to answer the following questions:

- Under the terms of [the Agreement], does MCH have an obligation to report employee misconduct to CDCR?
- Is MCH required to follow CDCR medical policies and procedures?
- Do you know how much it costs to perform and process a GBS test?
- Do you know how much in the past it cost to perform and process a GBS test?
- Do you know how much Intrapartum Antimicrobial Prophylaxis costs?

As to the cost of GBS testing and antibiotics, MCH argues that there is no way to measure the costs involved because it is impossible to separate out all aspects of the costs of the procedures. However, Mr. Foote can testify as to what MCH *bills* for such services. While the questions did not define "costs" as the amount billed, such information is a reasonable answer and would provide Plaintiff with the necessary information.

Accordingly, MCH will answer these questions in a declaration made under penalty of perjury. The declaration shall be due within twenty (20) days of the date of service of this order.

As to the questions relating to MCH's contract with CDCR, it appears that Plaintiff is seeking answers from someone in a position to discuss MCH's interpretation of the contract terms. Plaintiff seeks information, however, as to the interpretation of both financial issues and medical policies. It seems that such questions are better suited to a set of ten interrogatories, which would allow more than one person to contribute their knowledge to the issues. The interrogatories shall be served within ten (10) days of the date of service of this order. Responses will be due thirty (30) days from the date of service on MCH.

D.     <u>Sanctions</u>

Plaintiff's request for sanctions is DENIED. Although Plaintiff argues that MCH's actions are sanctionable, the Court finds that sanctions are not appropriate at this time. MCH's concerns regarding disclosure of expert testimony and disclosure of privileged information were reasonable. Moreover, the Court has fashioned remedies that are neither expensive nor burdensome to the parties. Plaintiff may reapply for sanctions, if needed, after completion of the further discovery permitted by this Order.

E.    <u>MCH's Motion for Protective Order</u>

MCH's motion for a protective order is MOOT given the disposition of the motion to compel and the related instructions to the parties.


IT IS SO ORDERED.

**Dated:   September 23, 2009**                              **/s/ Dennis L. Beck**
                                                    UNITED STATES MAGISTRATE JUDGE