# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONDI VAN HORN, | CASE NO. CV F 08-1622 LJO DLB |
| Plaintiff, | **ORDER ON DEFENDANT TINA DHILLON'S MOTION FOR SUMMARY JUDGMENT** (Doc. 215) |
| vs. | |
| TINA HORNBEAK, et al, | |
| Defendants. | |

By notice filed on February 3, 2010, Defendant Tina Dhillon, M.D. ("Dr. Dhillon") moves for summary judgment pursuant to Fed.R.Civ.P. 56 on the Fourth Cause of Action for Professional Negligence and the Sixth Cause of Action for Wrongful Death. Plaintiff Dondi Van Horn ("plaintiff") filed an opposition on February 26, 2010. (Doc. 260.) Defendant Dr. Dhillon did not file a timely reply brief. Pursuant to Local Rule 230(g), this matter is submitted on the pleadings without oral argument. Therefore, the hearing set for March 15, 2010 is VACATED. Having considered the moving and opposition reply papers, as well as the Court's file, the Court issues the following order.

## BACKGROUND

**A. Overview of Plaintiff's Medical Condition**

On July 31, 2007, Ms. Van Horn entered Valley State Prison for Women ("VSPW") inmate when she was 34 weeks pregnant. Plaintiff alleges that during her incarceration and pregnancy, the national standard of care provided that pregnant women should be tested between the 35th and 37th weeks of

pregnancy for Group B Streptococcus, a bacterium ("GBS"). (Fourth Amended Complaint "FAC" ¶¶18-21.) Before delivery and while incarcerated, plaintiff visited the doctors at VSPW and Madera Community Hospital at least four times, but was never tested for GBS. (FAC ¶ 22-40.) On August 26, 2007, at full term pregnancy, Ms. Van Horn delivered her son by cesarean section. Her son's condition deteriorated rapidly, and he died in the late evening of August 27, 2007.

**B.     Medical Records for Plaintiff's Visits to MCH**

Plaintiff was transported from VSPW to MCH on multiple separate occasions with complaints arising from her pregnancy. Dr. Dhillon was the physician who saw plaintiff on several of these occasions. A summary of the visits is as follows.[1]

On August 20, 2007, plaintiff was transported to the Madera Community Hospital ("MCH") Emergency Department for treatment. MCH employees concluded that plaintiff was not in active labor. On August 20, 2007, plaintiff was 37 and 2 days pregnant and was afebrile and not in active labor. Dr. Dhillon was consulted by telephone and gave her orders. Dr. Dhillon determined that plaintiff was not in active labor, and plaintiff was discharged back to VSPW.

On August 21, 2007, plaintiff was transferred again from VSPW to MCH and seen at the Emergency Department. Dr. Dhillon again was the obstetrician who was consulted about plaintiff on August 21, 2007. The MCH records indicate that plaintiff was 37 weeks and 2 days pregnant, was afebrile and not in active labor. The MCH records indicate that Dr. Dhillon determined plaintiff was not in active labor and did not need to be admitted into MCH. Plaintiff was again discharged back to VSPW on August 21, 2007 on Dr. Dhillon's orders.

On August 26, 2007, plaintiff was transported from VSPW to MCH. The obstetrician at that time was again Dr. Dhillon. Plaintiff was admitted to labor and delivery. Plaintiff's GBS test results were not available to Dr. Dhillon on her delivery date of August, 2007, and were thus "unknown." Dr. Dhillon noted that the prison was contacted for a copy of plaintiff's recent ultrasound and a copy of her GBS results. Dr. Dhillon also noted in the records that the prison was unable to locate the records. Plaintiff did not remember having a GBS culture performed or want any GBS culture obtained during

---

[1] The facts are those contained in Dr. Dhillon's moving papers. (Doc. 216.) The relevant medical treatment and sequence of events are largely undisputed.

2

her prenatal care. After plaintiff failed to progress in labor on August 26, 2007, plaintiff underwent a primary low transverse cesarean section. Throughout her entire labor course, MCH medical records indicate that plaintiff remained afebrile. The baby developed respiratory complications and died on August 27, 2007.

**C.     Challenged Causes of Action**

Plaintiff contends that Dr. Dhillon was negligent in failing to screen for the GBS bacteria, to test for this bacteria, to recognize that Plaintiff had the bacteria, and thereafter, to treat the bacteria and/or possible infection during Plaintiff's prenatal care, labor and delivery. Dr. Dhillon is named in the following causes of action:

-       Fourth Cause of Action for Professional Negligence, and

-       Sixth Cause of Action for Wrongful Death.  (Doc. 167.)

Dr. Dhillon challenges each of these causes of action in this motion.

**ANALYSIS AND DISCUSSION**

**A.     Summary Judgment/Adjudication Standards**

F.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim." Summary judgment/adjudication is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law. F.R.Civ.P. 56( c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56 ( c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The evidence of the party opposing summary judgment/adjudication is to be believed and

all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

To carry its burden of production on summary judgment/adjudication, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56( c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322,

106 S.Ct. 2548. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

**B.     The Fourth Cause of Action for Professional Malpractice**

Dr. Dhillon argues that she is entitled to summary judgment on the Fourth Cause of Action for Professional Negligence because she met the applicable standard of care.

The elements a plaintiff must prove for a negligence action based on medical malpractice are: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Johnson v. Superior Court*, 143 Cal.App.4th 297, 305, 49 Cal.Rptr.3d 52 (2006); *Hanson v. Grode*, 76 Cal.App.4th 601, 606, 90 Cal.Rptr.2d 396 (1999) (same). "The standard of care in a medical malpractice case requires that medical service providers exercise ... that degree of skill, knowledge and care ordinarily possessed and exercised by members of their profession under similar circumstances." *Barris v. County of Los Angeles*, 20 Cal.4th 101, 108 n. 1, 83 Cal.Rptr.2d 145, 972 P.2d 966 (1999), *cert. denied*, 528 U.S. 868 (1999). "Because the standard of care in a medical malpractice case is a matter 'peculiarly within the knowledge of experts,' expert testimony is required to 'prove or disprove that the defendant performed in accordance with the standard of care' unless the negligence is obvious to a layperson." *Johnson*, 143 Cal.App.4th at 305, 49 Cal.Rptr.3d 52.

**1.     Experts' Declarations**

Both parties present expert declarations from qualified experts who opine on the standard of care, as well as the other elements of the professional negligence cause of action. The pertinent testimony of the experts is as follows.

**a.     Dr. Dhillon's Expert**

Dr. Dhillon presents the declaration of John Wachtel, M.D. Dr. Wachtel obtained his medical degree in 1976, is Board certified in Obstetrics/Gynecology since 1982 and is the Clinical Professor in

the Department of Obstetrics and Gynecology at Stanford University School of Medicine. (Wachtel Decl. ¶3.) He serves on several medical quality assurance committees and practices in the Menlo Medical Clinic, which is a member of the Stanford University Health Services. He states that the applicable standard of care "requires that a reasonable or prudent obstetrician gynecologist exercise the reasonable degree of skill, knowledge and care ordinarily possessed and exercised by members of their profession under the same or similar circumstances." (Wachtel Decl. ¶8.) Dr. Dhillon identifies the medical records he reviewed and the pertinent contents of the records for his opinion. (Wachtel Decl. ¶¶10-19.) Dr. Wachtel then opines that:

> "it is his opinion that Dr. Dhillon met the applicable standard of care in all of her care and treatment of Plaintiff Dondi Van Horn. Specifically, Dr. Dhillon met the applicable standard of care in the management of her labor and performance of a primary low transverse cesarean section. Moreover, Dr. Dhillon met the applicable standard of care in her assessment of Ms. Van Horn prior to the procedure and was not obligated or required to treat Ms. Van Horn for Group B. Streptococcus as she met none of the published risk factors for this complication of labor." (Wachtel Decl. ¶20.)

Dr. Wachtel's opinion is that Dr. Dhillon was not required to culture plaintiff for GBS during her August 20, or 21 visits. Dr. Wachtel also opines that Dr. Dhillon was not required to administer prophylactic antibiotics for GBS prior to or during the delivery of the baby. (Wachtel Decl. ¶20.)

### b. Plaintiff's Expert

Plaintiff presents the declaration of Michael Cardwell, M.D., who is a Board certified obstetrician-gynecologist and maternal fetal medicine specialist licensed in nine states. (Doc. 270, Cardwell Decl. ¶1.) Dr. Cardwell states the CDC guidelines define the minium standard of care for GBS testing and treatment. Dr. Cardwell states that the CDC guidelines recommend universal prenatal screening of pregnant women at 35-37 weeks gestation. He states that the CDC guidelines identify risk factors which would support use of IAP in the absence of a positive GBS test result. He states that these risk factors are preterm labor of less than 37 weeks; prolonged rupture of membrane greater than 18 hours, and maternal fever during labor of greater than 38 degrees Celsius. (Doc. 270, Cardwell Decl. ¶12.) The CDC guidelines for GBS testing and prevention were adopted by the American College of Obstetricians and Gynaecologist ("ACOG") in December 2002. (Doc. 270, Cardwell M.D. Decl. ¶14.) According to plaintiff's expert, ACOG identified additional risk factors which should be considered in

tandem with the identified risk factors in the CDC guidelines. These additional risk factors include (1) inadequate prenatal care; (2) black race; (3) Hispanic ethnicity, and (4) maternal age less than 20 years. (*Id.*) ACOG recommended that physicians use these additional risk factors to identify women whom may not have the specified risk factors identified in the CDC guidelines but still have a risk of being infected with GBS. (*Id.*)

Dr. Cardwell states that the standard of care also requires a physician who sees a patient for acute or emergency care during the 35-37 gestation period, to perform GBS screening if the physician is aware the patient is unlikely to have a routine appointment during the key gestation period. Dr. Cardwell states that "[w]hile the national standard dictates that screening must occur between 35-37 weeks gestation, if a physician is aware that the GBS screening has not occurred during that period, even after the 37th week, he is responsible for performing the GBS testing at any time before delivery." (Doc. 270, Cardwell Decl. ¶18.) "If a physician is uncertain of the accuracy of a patient's gestation and estimates that gestation is within the 35-37 week window, the physician should perform the GBS test on the patient." (Doc. 270, Cardwell Decl. ¶19.) Dr. Cardwell states that the standard of care requires screening for GBS if a patient presents during the relevant 35-37 week gestation period and the GBS status is "unknown." (Doc. 270, Cardwell Decl. ¶36.)

As to whether Dr. Dhillon performed to the standard of care, Dr. Cardwell states that the standard of care requires that the physician give a pregnant patient a GBS test at any point after 35 weeks gestation, as the risk is still present at any time before labor. (Doc. 270, Cardwell Decl. ¶51.) Dr. Dhillon did not perform any GBS test on plaintiff. Dr. Cardwell states that plaintiff had a high risk pregnancy and had high risk factors which should have been assessed as part of evaluation of whether to give the GBS testing. (Doc. 270, Cardwell. Decl. ¶¶ 52-54.) Dr. Cardwell opines that Dr. Dhillon improperly disregarded the risks to plaintiff, which fell below the standard of care. (Doc. 270, Cardwell Decl. ¶¶55-56.)

### 2. **Failure to Identify the Standard of Care**

Here, Dr. Wachtel's declaration fails to set forth the proper community standard of medical care. *See Meier v. Ross General Hospital*, 69 Cal.2d 420, 429-431, 71 Cal.Rptr. 903, 445 P.2d 519 (1968) (the usual rule that a plaintiff's medical malpractice action must be supported by some expert evidence

7

as to the proper community standard of care.). "The standard of care in a medical malpractice case requires that medical service providers exercise that ... degree of skill, knowledge and care ordinarily possessed and exercised by members of their profession <u>under similar circumstances</u>." *Barris v. County of Los Angeles*, 20 Cal.4th at 108 (emphasis added); *see, e.g.*, *Gerard v. Ross*, 204 Cal.App.3d 968, 987-88, 251 Cal.Rptr. 604 (1988) (observing "[t]o determine the validity of [a legal malpractice] allegation, the trier of fact is entitled to the benefit of expert evidence as to the proof of the prevailing standard of skill and learning in the same or similar locality and the propriety of particular conduct by the practitioner."); *Lipscomb v. Krause*, 87 Cal.App.3d 970, 151 Cal.Rptr. 465 (1978) (in legal malpractice action, proof of relative issues generally required testimony of experts as to standard of care and consequences of breach). Thus, the expert must opine upon the prevailing standard of skill and learning in the same or similar locality and the propriety of a particular conduct.

In *Kelley v. Trunk,* 66 Cal.App.4th 519, 523 (1998), for instance, a medical negligence action, the Court of Appeal reversed a summary judgment which had been based on a conclusory expert declaration. There, plaintiff had sued two physicians, alleging that he had lost the use of his arm and suffered neurological damage as a result of negligent medical care. One of the physicians moved for summary judgment based on an expert declaration that stated that the doctor had 'At all times ... acted appropriately and within the standard of care under the circumstances presented," with no further explanation as to the appropriate standard of care or reasons for the opinion. In addition to observing that the declaration lacked foundation for not disclosing the matter relied upon in forming the opinion, the Court of Appeal ruled that "a defendant doctor is not entitled to obtain summary judgment based on a conclusory expert declaration which states the opinion that no malpractice has occurred, but does not explain the basis for the opinion." *Kelley*, 66 Cal.App.4th at 521. The Court stated: "[A]n expert opinion is worth no more than the reasons upon which it rests.... Without illuminating explanation, it was insufficient to carry [the doctor's] burden in moving for summary judgment." *Id.* at 524, 78 Cal.Rptr.2d 122.) *Kelley* has been criticized by courts for requiring expert declarations to contain "excruciating detail." However, *Kelley* is applicable. As in the instant case, the court in *Kelley* considered the sufficiency of the expert's declaration in support of the defendant's motion for summary judgment. The declaration failed to set forth the applicable standard of care for the situation. The

8

defendant bears the burden of persuasion and therefore, the declaration must identify the standard of care for which the defendant physician fell below.[2]

Here, Dr. Wachtel's declaration simply fails to identify the standard of care in this circumstance. He opines in a broad and generalized characterization of the standard of care. He opines that the standard of care "requires that a reasonable or prudent obstetrician gynecologist exercise the reasonable degree of skill, knowledge and care ordinarily possessed and exercised by members of their profession under the same or similar circumstances." (Wachtel Decl. ¶8.) This broad characterization fails to identify any particular standard of care <u>in this circumstance</u>, against which Dr. Dhillon's conduct may be measured. California law requires expert testimony to establish the appropriate measure of medical care in a given circumstance.

Dr. Wachtel failed to identify any standard other than the conclusory standard of care. Accordingly, defendant Dr. Dhillon has failed to carry her burden whether she performed to the applicable standard of care in the community in the circumstance.

### 3. The Dispute over the Standard of Care

Here, even if Dr. Dhillon had carried her burden on this motion, the parties dispute the standard of care applicable. Dr. Wachtel states a generalized standard of care, while plaintiff's expert identifies a standard of care which is more in depth and applicable to the circumstances at hand.

"California courts have incorporated the expert evidence requirement into their standard for summary judgment in medical malpractice cases. When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless <u>the plaintiff comes forward with conflicting expert evidence</u>." *Hanson*, 76 Cal.App.4th at p. 607 (emphasis added).

Here, plaintiff's expert, Dr. Cardwell, opines that the CDC guidelines are the minimum standard and that those minimum standards include the risk factors identified by ACOG. Plaintiff's expert also

---

[2] The Ninth Circuit does not require all of the expert's reasoning to be stated in the expert's declaration. In *Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1318 (9th Cir. 1985), the Ninth Circuit stated: "Expert opinion is admissible and may defeat summary judgment if it appears that the affiant is competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit, even though the underlying factual details and reasoning upon which the opinion is based are not." Thus, the Ninth Circuit does not require the expert to state his/her reasoning, but an expert, nonetheless, must identify the appropriate standard of care in a given situation. Indeed, California law requires that the expert establish the standard of care.

9

asserts that the standard of care includes testing for GBS during the 35-37 gestation period if the treating physician has a reasonable expectation that the patient may not be tested during the 35-37 week period, regardless of whether the patient is seen for acute or emergency care. Plaintiff's expert asserts the standard of care includes "proximity" to the 35-37 week testing period.

This dispute over the standard of care raises a genuine issue of fact which precludes summary judgment. If plaintiff's evidence is believed that the CDC guidelines, plus assessing additional risk factors and other criteria (as detailed in Dr. Cardwell's declaration) are the standard of care, Dr. Dhillon's conduct fell below the standard of care. The evidence conflicts as to the proper standard of care and whether the standard of care has been breached. Factual questions such as this cannot be resolved on summary judgment. Issues of credibility should be left to the jury. *Lowe v. City of Monrovia*, 775 F.2d 998, 1008 (9th Cir. 1985).

**4.     Breach of the Duty and Causation**

Defendant Dr. Dhillon also argues her conduct did not breach the duty of care because the care and treatment of plaintiff was within the standard of care applicable at the time and did not cause injury to plaintiff.

The Court does not reach the factual issues of breach of duty and causation. The Court has found the Dr. Dhillon has not carried her burden in this motion and even if she had carried her burden, there is a dispute as to the appropriate standard of care. Accordingly, because the standard of care is a disputed factual issue, the Court does not reach the factual issues of breach of duty and causation.

**C.     State Law Claim for Wrongful Death**

Plaintiff's sixth cause of action is for wrongful death. Dr. Dhillon argues that summary judgment is warranted on this claim because she met the standard of care in her treatment of plaintiff.

California Code of Civil Procedure § 377.60 establishes a separate statutory cause of action in favor of specified heirs of a person who dies as a result of the 'wrongful act or neglect' of another. Under a wrongful death cause of action, the specified heirs are entitled to recover damages on their own behalf for the loss they have sustained by reason of the bodily injury victim's death. *See Jacoves v. United Merchandising Corp.*, 9 Cal.App.4th 88, 105, 11 Cal.Rptr.2d 468, 478 (1992). Although it is a statutorily-created action, a wrongful death suit predicated on negligence must still contain the elements

of actionable negligence. *Jacoves v. United Merchandising Corp.*, 9 Cal.App.4th at 105. The state law claim for negligence requires proof of (1) the duty, (2) breach, (3) causal connection, and (4) actual loss. *Id., accord Mattco Forge, Inc. v. Arthur Young & Co.,* 52 Cal.App.4th 820, 833 (1997).

In diagnosing and treating patients, doctors must exercise the reasonable degree of skill, knowledge and care ordinarily exercised by doctors under similar circumstances in their professional community. The standard of skill, knowledge and care prevailing in a medical community is ordinarily a matter within an expert's knowledge. Expert opinion, therefore, is required to determine the probability of negligence where a medical process is not a matter of common knowledge. *Jacoves v. United Merchandising Corp.*, 9 Cal.App.4th at 106. Expert testimony is required to decide the issues raised in the complaint regarding the applicable standard of care. *Osborn v. Irwin Memorial Blood Bank*, 5 Cal.App.4th 234, 273 (1992).

Since issues of fact exist as to the standard of care, the cause of action for wrongful death cannot be summarily adjudicated.

## CONCLUSION

For the foregoing reasons, the Court Orders as follows on Defendant Dr. Tina Dhillon's motion for summary judgment, or in the alternative, summary adjudication:

1. DENIES the motion as to the Fourth Cause of Action for Professional Negligence,
2. DENIES the motion as to the Sixth Cause of Action for Wrongful Death.

IT IS SO ORDERED.

**Dated:   March 10, 2010**               /s/ Lawrence J. O'Neill
                                          UNITED STATES DISTRICT JUDGE