IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONDI VAN HORN,<br><br>           Plaintiff,<br><br>   vs.<br><br>TINA HORNBEAK, et al,<br><br>           Defendants.<br>                                             / | CASE NO. CV F 08-1622 LJO DLB<br><br>**ORDER ON PLAINTIFF'S**<br>**MOTION FOR SUMMARY JUDGMENT**<br>**AGAINST DR. DHILLON** (Doc. 267) |

     By notice filed on February 26, 2010, Plaintiff Dondi Van Horn ("plaintiff") moves for summary judgment pursuant to Fed.R.Civ.P. 56 against defendant Tina Dhillon, M.D. ("Dr. Dhillon"). Defendant Dr. Dhillon filed an opposition on March 15, 2010. (Doc. 294.) Plaintiff filed a reply brief of March 22, 2010. (Doc. 308.) Pursuant to Local Rule 230(g), this matter was submitted on the pleadings without oral argument. Therefore, the hearing set for March 29, 2010 was VACATED. Having considered the moving, opposition and reply papers, as well as the Court's file, the Court issues the following order.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.   Overview of Plaintiff's Medical Condition**

     On July 31, 2007, Ms. Van Horn entered Valley State Prison for Women ("VSPW") inmate when she was 34 weeks pregnant. Plaintiff alleges that during her incarceration and pregnancy, the national standard of care provided that pregnant women should be tested between the 35th and 37th weeks of pregnancy for Group B Streptococcus, a bacterium ("GBS"). (Fourth Amended Complaint "FAC" ¶¶18-21.) Before delivery and while incarcerated, plaintiff visited the doctors at VSPW and Madera Community Hospital ("MCH") at least four times, but was never tested for GBS. (FAC ¶ 22-40.) On August 26, 2007, at full term pregnancy, Ms. Van Horn delivered her son by cesarean section. Her son's condition deteriorated rapidly, and he died in the late evening of August 27, 2007.

**B.   Prior Motion for Summary Judgment by Dr. Dhillon**

     Dr. Dhillon previously moved for summary judgment on the same causes of action which now

1

are the subject of plaintiff's motion against Dr. Dhillon. The Court denied Dr. Dhillon's motion for summary judgment on two grounds. First, the Court found that Dr. Dhillon had failed to carry her burden of whether she performed to the applicable standard of care in the community in the circumstance. (Doc. 291, March 10, 2010 Order, p. 9.) Dr. Dhillon's expert, Dr. Wachtel, opined that the standard of care "requires that a reasonable or prudent obstetrician gynecologist exercise the reasonable degree of skill, knowledge and care ordinarily possessed and exercised by members of their profession under the same or similar circumstances." (Doc. 291, March 10, 2010 Order, p. 6.) The Court held that Dr. Dhillon's expert failed to state a standard of care under the particular circumstance against which Dr. Dhillon's conduct could be measured. The Court, therefore, denied the motion because the expert stated a conclusory standard of care.

The Court also denied the motion on a second ground. The standard of care was disputed. Plaintiff had introduced expert testimony by Dr. Cardwell as to the applicable standard of care and why Dr. Dhillon's conduct fell below that standard of care. The Court stated that the standard of care opined by Dr. Dhillon's expert, while not specific, was sufficient to raise an issue of fact because of the expertise of the designated expert. Thus, the Court denied Dr. Dhillon's motion for summary judgment on a second ground that the standard of care was disputed.

**C.   Medical Records for Plaintiff's Visits to MCH**

In Dr. Dhillon's prior motion, this Court reviewed the medical records that pertained to plaintiff's visits to MCH and treatment by Dr. Dhillon. Dr. Dhillon saw plaintiff at least 2 times and performed the cesarean section to deliver plaintiff's baby. It is undisputed that no GBS testing was performed. The Court incorporates the references to the medical records and does not restate them here. (See Doc. 291, March 10, 2010 Order, p. 2.)

**D.   Plaintiff's Current Motion Regarding Dr. Dhillon's Expert**

Plaintiff moves for summary judgment against Dr. Dhillon on the grounds that Dr. Dhillon's expert, Dr. Wachtel, offers "only a cursory and conclusory declaration" that never defines the standard of care. (Doc. 268, Plaintiff's Moving papers p.1:17.) Plaintiff brought a Motion to Strike Dr. Wachtel's declaration before the Magistrate Judge, at the same time as she sought this summary judgment. By order on March 16, 2010, the Magistrate Judge denied plaintiff's request to strike the

2

declaration and ordered Dr. Dhillon to supplement her expert designation. That expert designation was supplemented on March 15, 2010 and timely filed in support of Dr. Dhillon's opposition to this motion for summary judgment. (Doc. 293 and Doc. 297.)

### 1. Dr. Dhillon's Supplemental Expert Designation

In the supplemental designation, Dr. Wachtel expands upon his earlier statement of the standard of care. Dr. Wachtel opines that "[t]he CDC and ACOG guidelines contribute to the standard of care in this circumstance . . . [c]omplying with the CDC and ACOG guidelines would constitute, in this case, compliance with the standard of care."[1] (Doc. 297, Supplemental Designation p.5 ¶12.) Dr. Wachtel opines that "the standard of care, the CDC guidelines, COG guidelines and MCH's policy re GBS prevention did not require Dr. Dhillon to obtain or order GBS screening at any of the above reference visits." (Doc. 297, Supplemental Designation p.5 ¶14.) He is of the opinion that GBS cultures are to be obtained by the primary prenatal provider and Dr. Dhillon was not the primary prenatal provider. *Id.* As also relevant to the current motion, Dr. Wachtel opines that the "standard of care did not require Dr. Dhillon to administer prophylactic antibiotics for Group B Streptococcus to Ms. Van Horn during labor or prior to the cesarean birth delivery of the baby on August 26, 2007." (Doc. 297, Supplemental Designation p.5 ¶15.) Dr. Wachtel states that "I believe that Dr. Dhillon did comply with the CDC and ACOG guidelines and otherwise acted as would reasonable and prudent obstetricians under the same or similar circumstances." (Doc. 297, Supplemental Designation p.5 ¶12.)

### 2. Plaintiff's Argument that Dr. Wachtel's Declaration should be Disregarded

Plaintiff argues that the Court should not consider Dr. Wachtel's supplemental report in opposition to plaintiff's motion for summary judgment. Plaintiff relies upon this Court's opinion in *Silong v. U.S.,* 2007 WL 2712100 (E.D. Cal. 2007) (O'Neill, J.) to argue that the declaration should not considered.

This Court's decision in *Silong*, however, is distinguishable. In *Silong*, the expert did not

---

[1] The "CDC" is the Center for Disease Control. "ACOG" is the American College of Obstetricians and Gynaecologist.

3

supplement his expert report in compliance with Rule 26. The expert's original report did not contain all of his opinions. Rather, in opposition to a summary judgment motion, plaintiffs submitted a declaration and deposition excerpts. Plaintiffs did not "explain why they failed to supplement Dr. Edelberg's initial expert report <u>in the year</u> between its submission and the closure of discovery." (Emphasis added.) The Court noted that the detailed declaration was submitted long after expert disclosures were due, and months after depositions were taken and discovery closed. Similarly, in *Wong v. Regents of University of Cal.*, 379 F.3d 1097 (9th Cir. 2004), also cited by plaintiff, the court excluded a late-designated expert after the disclosure deadline and while summary judgment was pending.

The instant case is not the *Silong* or *Wong* case. Rule 26(e)(1) requires a party to supplement an initial disclosure under Rule 26(a) "if the party learns that in some material respect the information disclosed is incomplete or incorrect." Dr. Dhillon was granted leave to supplement her expert designation, which she did on March 15, 2010. That designation and supporting opinions by Dr. Wachtel were filed, in a timely fashion, in opposition to this motion. The issue of the propriety of Dr. Wachtel's original declaration was raised and decided by the Magistrate Judge. The Magistrate Judge considered the "prejudice" to plaintiff from the supplemental disclosure and permitted the supplement.[2] Further, given the number and extent of similar medical experts in this case who opined on the exact same points as Dr. Wachtel, admission of his declaration is not prejudicial to plaintiff in this motion. (See Declarations of Drs. Reingold and Nageotte.) The Court does not find the discovery abuse in this case that existed in the *Silong* case such that the expert's supplemental designation should not be considered.

### 3. Plaintiff's Expert, Dr. Michael Cardwell

Plaintiff, once again, offers the declaration of Michael Cardwell, M.D., who is a Board certified obstetrician-gynecologist and maternal fetal medicine specialist licensed in nine states. (Doc. 270, Cardwell Decl. ¶1.) Dr. Cardwell states the CDC guidelines define the minium standard of care for GBS

---

[2] The Magistrate Judge also considered the history of the discovery dispute and pertinent events leading to his decision. (Doc. 299, March 16, 2010 Order ("Dr. Wachtel's report was produced over a month prior to the expert discovery deadline, meaning that Plaintiff could have resolved the ambiguities by either asking Dr. Dhillon to supplement the report or proceeding with Dr. Wachtel's deposition. Instead, Plaintiff took Dr. Wachtel's deposition off calendar and chose to represent to the Court that they remained unaware of the disputes between the parties.")

testing and treatment. Dr. Cardwell states that the CDC guidelines recommend universal prenatal screening of pregnant women at 35-37 weeks gestation. He states that the CDC guidelines identify risk factors which would support use of IAP in the absence of a positive GBS test result. He states that these risk factors are preterm labor of less than 37 weeks; prolonged rupture of membrane greater than 18 hours, and maternal fever during labor of greater than 38 degrees Celsius. (Doc. 270, Cardwell Decl. ¶12.) The CDC guidelines for GBS testing and prevention were adopted by the American College of Obstetricians and Gynaecologist ("ACOG") in December 2002. (Doc. 270, Cardwell M.D. Decl. ¶14.) According to plaintiff's expert, ACOG identified additional risk factors which should be considered in tandem with the identified risk factors in the CDC guidelines. These additional risk factors include (1) inadequate prenatal care; (2) black race; (3) Hispanic ethnicity, and (4) maternal age less than 20 years. (*Id.*) ACOG recommended that physicians use these additional risk factors to identify women whom may not have the specified risk factors identified in the CDC guidelines but still have a risk of being infected with GBS. (*Id.*)

Dr. Cardwell states that the standard of care also requires a physician who sees a patient for acute or emergency care during the 35-37 gestation period, to perform GBS screening if the physician is aware the patient is unlikely to have a routine appointment during the key gestation period. Dr. Cardwell states that "[w]hile the national standard dictates that screening must occur between 35-37 weeks gestation, if a physician is aware that the GBS screening has not occurred during that period, even after the 37th week, he is responsible for performing the GBS testing at any time before delivery." (Doc. 270, Cardwell Decl. ¶18.) "If a physician is uncertain of the accuracy of a patient's gestation and estimates that gestation is within the 35-37 week window, the physician should perform the GBS test on the patient." (Doc. 270, Cardwell Decl. ¶19.) Dr. Cardwell states that the standard of care requires screening for GBS if a patient presents during the relevant 35-37 week gestation period and the GBS status is "unknown." (Doc. 270, Cardwell Decl. ¶36.)

As to whether Dr. Dhillon performed to the standard of care, Dr. Cardwell states that the standard of care requires that the physician give a pregnant patient a GBS test at any point after 35 weeks gestation, as the risk is still present at any time before labor. (Doc. 270, Cardwell Decl. ¶51.) Dr. Dhillon did not perform any GBS test on plaintiff. Dr. Cardwell states that plaintiff had a high risk

5

pregnancy and had high risk factors which should have been assessed as part of evaluation of whether to give the GBS testing. (Doc. 270, Cardwell. Decl. ¶¶ 52-54.) Dr. Cardwell opines that Dr. Dhillon improperly disregarded the risks to plaintiff, which fell below the standard of care. (Doc. 270, Cardwell Decl. ¶¶55-56.)

**E.     Challenged Causes of Action**

Plaintiff contends that Dr. Dhillon was negligent in failing to screen for the GBS bacteria, to test for this bacteria, to recognize that Plaintiff had the bacteria, and thereafter, to treat the bacteria and/or possible infection during Plaintiff's prenatal care, labor and delivery. Dr. Dhillon is named in the following causes of action:

- Fourth Cause of Action for Professional Negligence, and
- Sixth Cause of Action for Wrongful Death. (Doc. 167.)

## ANALYSIS AND DISCUSSION

**A.     Summary Judgment/Adjudication Standards**

F.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim." Summary judgment/adjudication is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment/adjudication as a matter of law. F.R.Civ.P. 56( c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56 ( c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The evidence of the party opposing summary judgment/adjudication is to be believed and

1 all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of
2 the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986);
3 *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient
4 disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as
5 a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

6       To carry its burden of production on summary judgment/adjudication, a moving party "must
7 either produce evidence negating an essential element of the nonmoving party's claim or defense or
8 show that the nonmoving party does not have enough evidence of an essential element to carry its
9 ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210
10 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d
11 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party
12 must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102;
13 *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts
14 are material. Only disputes over facts that might affect the outcome of the suit under the governing law
15 will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

16       "If a moving party fails to carry its initial burden of production, the nonmoving party has no
17 obligation to produce anything, even if the nonmoving party would have the ultimate burden of
18 persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598.
19 "If, however, a moving party carries its burden of production, the nonmoving party must produce
20 evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d
21 at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material
22 fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see*
23 *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry of
24 summary judgment, after adequate time for discovery and upon motion, against a party who fails to make
25 the showing sufficient to establish the existence of an element essential to that party's case, and on
26 which that party will bear the burden of proof at trial.")

27       "But if the nonmoving party produces enough evidence to create a genuine issue of material fact,
28 the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322,

106 S.Ct. 2548. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

**B.     The Fourth Cause of Action for Professional Malpractice**

Plaintiff's motion is the mirror image of Dr. Dhillon's motion for summary judgment, which this Court previously denied on the grounds discussed above. Plaintiff argues, nonetheless, that she is entitled to summary judgment on the Fourth Cause of Action for Professional Negligence because Dr. Dhillon fell below the standard of care and has only conclusory expert testimony that she complied with the standard of care.

**1.     The Elements for Professional Malpractice**

The elements a plaintiff must prove for a negligence action based on medical malpractice are: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Johnson v. Superior Court*, 143 Cal.App.4th 297, 305, 49 Cal.Rptr.3d 52 (2006); *Hanson v. Grode*, 76 Cal.App.4th 601, 606, 90 Cal.Rptr.2d 396 (1999) (same). "Because the standard of care in a medical malpractice case is a matter 'peculiarly within the knowledge of experts,' expert testimony is required to 'prove or disprove that the defendant performed in accordance with the standard of care' unless the negligence is obvious to a layperson." *Johnson*, 143 Cal.App.4th at 305, 49 Cal.Rptr.3d 52.

"California courts have incorporated the expert evidence requirement into their standard for summary judgment in medical malpractice cases. When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless <u>the plaintiff comes forward with conflicting expert evidence</u>." *Hanson*, 76 Cal.App.4th at p. 607 (emphasis added).

**2.     The Dispute over the Standard of Care**

8

Both parties present expert declarations from qualified experts who opine on the standard of care, as well as the other elements of the professional negligence cause of action. The experts simply dispute the standard of care applicable and whether Dr. Dhillon performed to the standard of care.

Even if the Court were to rely solely upon Dr. Wachtel's original expert declaration, Dr. Wachtel states a generalized standard of care. A reasonable trier of fact, after hearing the medical evidence, and given Dr. Wachtel's expertise and background, could conclude that Dr. Dhillon met the standard of care. All reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby,* 477 U.S. at 255. Thus, even if the Court were to rely upon Dr. Wachtel's original declaration, defendant has carried her burden to raise an issue of fact in opposition to the motion.

In his supplemental report, however, Dr. Wachtel states a more particularized standard of cause based upon the CDC guidelines and the ACOG guidelines. Dr. Wachtel states that the CDC and ACOG guidelines did not require Dr. Dhillon to test for GBS because Dr. Dhillon was not her primary care physician. Dr. Dhillon was not required by the standard of care to administer prophylactic antibiotics for GBS because the circumstances of plaintiff's delivery did not require administering antibiotics under the CDC and ACOG guidelines.

On the other hand, plaintiff's expert, Dr. Cardwell, opines that the CDC guidelines are the minimum standard and that those minimum standards include the risk factors identified by ACOG. Plaintiff's expert also asserts that the standard of care includes testing for GBS during the 35-37 gestation period if the treating physician has a reasonable expectation that the patient may not be tested during the 35-37 week period, regardless of whether the patient is seen for acute or emergency care. Plaintiff's expert asserts the standard of care includes "proximity" to the 35-37 week testing period.

This dispute over the standard of care raises a genuine issue of fact which precludes summary judgment. As this court said in Dr. Dhillon's previous motion, if plaintiff's evidence is believed that the CDC guidelines, plus assessing additional risk factors and other criteria (as detailed in Dr. Cardwell's declaration) are the standard of care, Dr. Dhillon's conduct may have fallen below the standard of care. The evidence conflicts as to the proper standard of care. Factual questions such as this cannot be resolved on summary judgment. Issues of credibility should be left to the jury. *Lowe v. City*

*of Monrovia*, 775 F.2d 998, 1008 (9th Cir. 1985).

### 3. Breach of the Duty and Causation

The Court does not reach the factual issues of breach of duty and causation. The Court has found the issues of fact exist as to the standard of care. Accordingly, because the standard of care is a disputed factual issue, the Court does not reach the factual issues of breach of duty and causation.

## C. State Law Claim for Wrongful Death

Plaintiff's sixth cause of action is for wrongful death. Plaintiff argues that summary judgment is warranted on this claim because Dr. Dhillon fell below the standard of care in her treatment of plaintiff.

Wrongful death is a statutorily-created action. A wrongful death suit predicated on negligence must contain the elements of actionable negligence. *See* Cal.Code Civ.Proc. § 377.60; *Jacoves v. United Merchandising Corp.*, 9 Cal.App.4th 88, 105, 11 Cal.Rptr.2d 468, 478 (1992). The state law claim for negligence requires proof of (1) the duty, (2) breach, (3) causal connection, and (4) actual loss. *Id., accord Mattco Forge, Inc. v. Arthur Young & Co.,* 52 Cal.App.4th 820, 833 (1997).

Since issues of fact exist as to the standard of care, the cause of action for wrongful death cannot be summarily adjudicated.

## CONCLUSION

For the foregoing reasons, the Court Orders as follows on plaintiff Dondi Van Horn's motion for summary judgment, or in the alternative, summary adjudication against Defendant Dr. Tina Dhillon:

1. DENIES the motion as to the Fourth Cause of Action for Professional Negligence,
2. DENIES the motion as to the Sixth Cause of Action for Wrongful Death.

IT IS SO ORDERED.

**Dated:   March 23, 2010**           /s/ Lawrence J. O'Neill
                                      UNITED STATES DISTRICT JUDGE